Irene Smith CLIETT, Appellant,

v.

Mamie S. HAMMONDS et al., Appellees.

No. 19533.

United States Court of Appeals
Fifth Circuit.

June 28, 1962.

Rehearing Denied July 26, 1962.

Newton B. Schwartz, Houston, Tex., for appellant.

W. H. Betts, Hempstead, Tex., George L. McGhee, Houston, Tex., for appellees.

Before TUTTLE, Chief Judge, and RIVES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This case involving an attack on a judgment finding Mrs. Cliett guilty of contempt for disobedience of the orders of the District Court grows out of the controversy which has raged between the parties in this Court, and the one below, for over a quarter of a century.[1] It has now run the gamut of every Judge of the Southern District (save the most recent who assumed office in December 1961), plus at least two others from outside the District sitting by designation.

■ After prolonged litigation which definitely put ownership of the one-half interest in the lands in question in the Hammonds,[2] Mrs. Cliett, still unconvinced by all of these judgments and opinions, persisted in obstruction to this obvious determination of legal ownership. As this was accompanied by an actual threat of armed resistance, the District Court had further hearings with a result that on July 8, 1958, Judge Ingraham entered an injunction against further interference with the prior orders of the District Court (as affirmed by this Court). The injunction had the effect, therefore, of making willful interference, obstruction, or noncompliance a violation both of the underlying substantive orders as to ownership and possession of the land as well as the explicit injunction. This order first enjoined Mrs. Cliett from entering or remaining upon the property, using or exercising dominion over it in any way, such as running cattle, maintaining fences, or the like, or interfering by threats of bodily injury or otherwise with their exclusive right of enjoyment, of use and possession. And then in very positive terms the injunction forbade Mrs. Cliett taking any legal action in any Court (except possibly the Southern District of Texas) or the filing of affidavits or other legal papers asserting that she

1. Scott v. Smith, 5 Cir., 1936, 84 F.2d 489; Cliett v. Scott, 5 Cir., 1939, 102 F.2d 725; Cliett v. Scott, 5 Cir., 1956, 233 F.2d 269, cert. denied, 352 U.S. 917, 77 S.Ct. 215, 1 L.Ed.2d 123; Cliett v. Hammonds, 5 Cir., 1959, 265 F.2d 933; Cliett v. Hammonds, 5 Cir., 1961, 286 F.2d 471, cert. denied, 366 U.S. 960, 81 S.Ct. 1921, 6 L. Ed.2d 1253.

2. For simplicity we refer to all of those adjudged to own the lands in dispute as the Hammonds.

was the owner of these lands.[3] On appeal this order was affirmed.[4]

As a matter of historical background, Mrs. Cliett, refusing to obey this injunction, was adjudged by Judge Rizley, then sitting by designation, to be in contempt and a judgment of punishment was entered on May 26, 1960, in a proceeding which all seem now to regard as one for criminal contempt. After commencement of the service of the sentence of confinement, the balance of the punishment was remitted. This was done upon a showing that Mrs. Cliett had purged herself of her current obstructive violations of the order and, in open court, had assured the Court that she "would in all things respect and observe [the injunction] unless and until said decree granting said injunction is set aside or vacated by this or another court of competent jurisdiction in the proceedings brought by [her] under Rule 60(b) * * *."

Thereafter the Hammonds filed suit in the Texas State Court against Mrs. Cliett for an accounting for rents and revenues during her wrongful occupancy and enjoyment of their lands for the period from 1955 to 1960. In this State Court action, Mrs. Cliett filed an answer and cross action (as well as amendments to each of them) in which in the plainest of terms she contended, as she always has, that she was the owner of these lands. This was not done with any subtlety or guarded implied criticism of the Federal Court judgments declaring title to be in the Hammonds. It was an outright blunt attack which, recognizing and referring to the extended litigation. charged that such judgments were fraudulent and void. The State Court, both by the defense to the action for rent and her affirmative cross action seeking an adjudication of the title in her, was therefore put in the position of determining again every contention which had been rejected in the Federal District Court and affirmed by us. She also filed a sworn *lis pendens* notice with the County Clerk of Waller County asserting ownership of the lands.

On December 11, 1961, the Hammonds through their counsel of record, brought this state of affairs to the attention of the District Court. This was done by a detailed, precise, verified petition. It concluded with a prayer seeking an order to show cause to Mrs. Cliett and her then attorney why each of them "should not be punished for violating such injunction." Judge Garza entered the order which required each of them to show cause why each of them "should not be punished as for contempt."

After an extended hearing in which he patiently heard and reheard the long involved story of this litigation, the contentions so earnestly, but unsuccessfully

---

3. By the order of July 8, 1958 Mrs. Cliett was permanently enjoined and restrained from:

"(c) filing or instituting or from causing to be filed or instituted any suit or judicial action against the Petitioners Mamie S. Hammonds, Reed Scott, Bertha Scott and Essie F. Scott, individually and as Independent Executrix of the Will and Estate of Jeff Scott, deceased, their tenants, heirs or assigns, respecting or relating to said Petitioners', their heirs or assigns, title to or right of possession of said 349.755 acres of land hereinbefore particularly described;

"(d) from uttering, executing, procuring the execution of, publishing in any newspaper or causing to be recorded in the Deed Records of Waller County, Texas, any statement, article, affidavit or other declaration asserting ownership of the 349.755 acres tract of land hereinbefore particularly described by Irene Smith Cliett, her heirs or assigns, or in derogation of or in disparagement of the ownership of the fee simple title in and to said lands by the petitioners, Mamie S. Hammonds, Reed Scott, Bertha Scott and Essie F. Scott, individually and as Independent Executrix of the Will and Estate of Jeff Scott, deceased, their heirs and assigns."

4. Cliett v. Hammonds, 5 Cir., 1959, 265 F. 2d 933. Examination of the original briefs in that appeal (No. 17476) reveals that the whole attack on that judgment was the basic one concerning the invalidity of the prior judgments determining ownership. No question was raised about the terms of the injunction, either generally or specifically as to subparagraph (c) and (d), note 3, supra.

held, and evidence consisting of certified copies of all of the pertinent State Court papers, as well as the oral testimony of Mrs. Cliett and her then attorney, Judge Garza entered the order of January 19, 1962, now under review. He found each of them guilty of contempt by reason of the action taken by each in the pending State Court suit and the filing of the *lis pendens*. On that finding, he adjudged that unless Mrs. Cliett, within twenty days,[5] would purge herself by taking specified action to withdraw the pleadings, *lis pendens*, etc. asserting ownership in the State Court action, she was to be confined in jail for a period of 90 days.[6] The order further provided that if during such 90-day confinement she did not purge herself of contempt, then each day thereafter would constitute a continuance of contempt for which the Court would impose further punishment.

■■ Several things stand out with vividness. First, on the record made, there is simply no doubt that by the actions taken by her in the State Court litigation, Mrs. Cliett violated paragraphs (c) and (d) of the injunction. Second, the acts constituting the violation being continuous in nature, a judgment as for *civil* contempt could properly provide for confinement until she purged herself. Third, and perhaps most important for our immediate purposes, a part of the judgment entered imposed what was actually punishment as for a *criminal contempt*, but this was done without following the procedures prescribed for criminal contempt. Fourth, and as a corollary to third, the proceeding was actually conducted and considered as though it was for civil, not criminal, contempt.

■■ The complicating factor in this case is that the judgment partakes of both civil and criminal contempt, even though the proceedings were in the nature of civil only. Thus, with respect to the very element of the jail sentence it-

self, a specific time (30 days) was allowed in which she could purge herself. Had she done so within that period, the confinement was expressly remitted entirely. Thus far the objective of the judgment was to coerce the recalcitrant party into compliance with the Court's decrees. That is the mark of civil contempt. Coca-Cola Co. v. Feulner, S.D.Tex., 1934, 7 F. Supp. 364. The sanction imposed by the judgment is commonly referred to as remedial. But after the expiration of that 30-day period without compliance, the 90-day jail sentence automatically became unconditional in execution and duration. No provision was made for release from imprisonment once the 90-day confinement commenced. This was unrelated to contemporary compliance with the Court's decree. Its objective was to punish. Its coercive character was only indirect. This part of the judgment was then the means by which the authority of the Court, not the mere interest of the parties, was vindicated. It was, in purpose and effect, criminal contempt. Gompers v. Buck's Stove & Range Co., 1911, 221 U.S. 418, 444–45, 31 S.Ct. 492, 55 L.Ed. 797; United States v. United Mine Workers, 1947, 330 U.S. 258, 303–304, 67 S.Ct. 677, 91 L.Ed. 884; In re Michael, 1945, 326 U.S. 224, 227, 66 S.Ct. 78, 90 L.Ed. 30.

■ Of course the requirement that determination of criminal contempt be distinguished from civil contempt far transcends mere formal identification. Though both may under many circumstances actually be tried together—and therefore by the same Judge simultaneously—and be based on and grow out of identical acts as to which the evidence will likewise be identical, there are basic fundamental differences compelling differences in the trial and adjudication of the two "cases."

■■ In a proceeding as for criminal contempt, the defendant-respondent

---

5. Subsequently extended another ten days for a total of thirty days to permit compliance.

6. Her then attorney whose punishment was assessed at 30 days' confinement purged himself within the allotted time, and that part of the order is of no further concern.

**570**

must be accorded all of the protections due one standing a traditional trial of a criminal offense charged by indictment. Nye v. United States, 1941, 313 U.S. 33, 52–53, 61 S.Ct. 810, 85 L.Ed. 1172. One important substantive requirement is that the respondent is presumed to be innocent and must be found guilty. More than that, that finding requires evidence showing guilt beyond a reasonable doubt. Coca-Cola v. Feulner, S.D.Tex., 1934, 7 F.Supp. 364 at 365. It is therefore entirely conceivable that one might be found guilty of civil contempt and then be thereby subjected to coercive restraints pending compliance, and at the same time be found not guilty of the charge of criminal contempt.

■■■■ In addition the distinction is important in procedural consequences such as, for example, the mode and time of appeal (10 days under F.R.Crim.P. 37 (a) (2), 18 U.S.C.A. in contrast to 30 days under F.R.Civ.P. 73(a), 28 U.S. C.A.). Similarly, while the burden on the prosecution for criminal contempt is heavier than for civil contempt, the respondent in the criminal contempt is severely limited in defenses. For in a criminal contempt the validity of the order allegedly disobeyed is not open to question in the slightest degree. Disobedience constitutes a contempt even though the order is set aside on appeal or otherwise becomes ineffective. In contrast, civil contempt falls with the order if it turns out to have been erroneously or wrongfully issued. United States v. United Mine Workers, 1947, 330 U.S. 258, 294, 67 S.Ct. 677, 91 L.Ed. 884; Worden v. Searls, 1887, 121 U.S. 14, 7 S. Ct. 814, 30 L.Ed. 853; Gompers v. Buck's Stove & Range Co., 1911, 221 U.S. 418, 451, 31 S.Ct. 492, 55 L.Ed. 797.

■■■■ We have recently dealt with this problem in Flight Engineers International v. Eastern Air Lines, Inc., 5 Cir., 1962, 301 F.2d 756. There we pointed out that it is just such factors which account for the precise terminology of F.R.Crim.P. 42. These factors compel compliance with its provisions that crimi-

nal contempt be prosecuted only on notice which "shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the *criminal contempt charged and describe it as such.*" (emphasis supplied)

■■■■ We need not detail all of the reasons imperatively calling for the conclusion that while the punishment ultimately partook of both civil and criminal characteristics, it was begun, tried and concluded as though it was for civil contempt only. To begin with the "prosecution" was not by the United States attorney or by some other attorney (such as for the party) specifically designated by the Court as F.R.Crim.P. 42(b) provides. The petition was filed by attorneys for the Hammonds. The case was tried by them. No clear-cut statement was ever made, either in the verified motion, in the opening statements of counsel, or by Judge Garza at the commencement of the hearing, to reveal positively that it was a proceeding for criminal contempt. That it was thought by all to be civil only was demonstrated at the very outset of the hearing when counsel for the Hammonds, taking the lead in establishing the contempt, had Mrs. Cliett sworn and called as a witness. To the suggestion of one of the associate counsel for the Hammonds—who expressed some amazement at this turn of events—that Mrs. Cliett be warned of her rights against self incrimination, Judge Garza in effect stated that she needed no warning since her then attorney had informed her completely of her rights. Though his failure to follow scrupulously the distinction between civil and criminal contempt was erroneous, this action of Judge Garza—coming into the case late in its career, but almost at the threshold of his as a Judge—was quite understandable since none of the counsel were apparently aware of F.R.Crim.P. 42, and in no event was it brought to the Judge's attention.

Consequently, that part of the judgment imposing the 90-day jail sentence as such must be set aside and remanded

for such other proceedings in compliance with F.R.Crim.P. 42 as might be deemed appropriate by the District Court, Flight Engineers International v. Eastern Air Lines, Inc., 5 Cir., 1962, 301 F.2d 756.

 But this does not eradicate the whole judgment of contempt since it is plain that the acts did, and were found by the Judge to, constitute a contumacious disobedience of the order warranting coercive sanctions to compel compliance. As a finding of civil contempt, the judgment of January 19, 1962 is fully supported. Exercising the power which we have, 28 U.S.C.A. § 2106, we modify it to eliminate the impermissible criminal punishment of 90 days' confinement, and the express predetermination that noncompliance thereafter shall constitute a "continuance of such contempt." Following the pattern outlined by Judge Garza's order of January 19, 1962, the modified judgment will allow Mrs. Cliett 20 days from the date of our mandate to come into compliance as prescribed in that order. In the event of non-compliance in full on or before that time, she will be remanded to the custody of the Marshal for confinement in jail pending her purging herself by full compliance. If at the end of 90 days of such confinement, she has not yet fully purged herself of contempt as prescribed in the order, she will then be brought back before the District Court for such orders for confinement or otherwise as might then be deemed appropriate.

Of course, this affirmance, as modified, of the judgment for civil contempt necessarily contemplates that we have overruled all of Mrs. Cliett's contentions concerning the validity of the order or the sufficiency of the actions as constituting a violation of it.

The first such attack is that the terms of subparagraphs (c) and (d) of the order, see note 3, are so broad as to constitute an unconstitutional prior restraint upon her First Amendment rights of free speech. See Near v. State of Minnesota, 1931, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357. Cf. Times Film Corp. v. Chicago, 1961, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403. But this constitutional issue is not presented by this record. The actions charged and found to have constituted contumacious disobedience of the order were carefully limited to the pleadings filed by Mrs. Cliett in the pending State Court litigation and the single out-of-court-paper, the *lis pendens* filed with the County Clerk. These all came within the prohibition of paragraph (c) against "filing or instituting * * * any suit or judicial action * * * relating to [the Hammonds] * * * title * * * or right of possession" to the lands, and that of subparagraph (d) against " * * * executing * * * or causing to be recorded in the Deed Records * * * any * * * affidavit * * * asserting ownership * * * [of the lands] * * * or in derogation of * * * the ownership of the fee simple title in * * * [the Hammonds] * * *."

 That brings us directly to the next contention that Mrs. Cliett has a right to relitigate this matter in the State Courts. That seems to be based on the argument that the prevailing party in the Federal Court (the Hammonds) must look to the State Judiciary to sustain a plea of res judicata. Nothing in the cases urged, see Loyning v. Loyning, 9 Cir., 1949, 171 F.2d 565; Land v. Dollar, 1947, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209; 341 U.S. 737, 71 S.Ct. 987, 95 L.Ed. 1331, sustain any such proposition. A final judgment would never be final. Nor could a Court secure to the prevailing party the fruits of such a final judgment since the order would be subject to attack and review of its intrinsic merits by Courts of an entirely different judicial system. When the Courts of Texas undertake to determine as between these parties or those in privity with them the issues foreclosed by the Federal Court judgments, the prevailing party has the remedy of contempt to secure effective enjoyment of such decrees. He has this even though, in addition to contempt, an injunction might well issue by the Federal Court directly to stay

**572**

the State Court proceedings as permitted by 28 U.S.C.A. § 2283 "to protect or effectuate its judgments." See American National Bank & Trust Co. of Chicago v. Taussig, 7 Cir., 1958, 255 F.2d 765, cert. denied, 358 U.S. 883, 79 S.Ct. 125, 3 L. Ed.2d 112; Jackson v. Carter Oil Co., 10 Cir., 1950, 179 F.2d 524, cert. denied, 340 U.S. 812, 71 S.Ct. 39, 95 L.Ed. 597. Indeed, effectuation of this statutory rule of comity to avoid collision between the Federal Court and the State Court and the proper reluctance to issue injunctions against State Court proceedings, see Southern California Petroleum Corp. v. Harper, 1960, 5 Cir., 273 F.2d 715; T. Smith & Son, Inc. v. Williams, 5 Cir., 1960, 275 F.2d 397, makes the mechanism of civil contempt against the recalcitrant party an appropriate mechanism to determine whether the orders of the Federal Court are being obeyed.

 This case has had a long and rich history. Years and years ago this Court affirmed the judgments of the District Court which put the legal title to the lands in dispute in the Hammonds. Every attack by Mrs. Cliett in the Federal Courts by post-judgment remedies and otherwise has failed by judgments which have also long since become final. Yet the controversy still asserted is the basic one that Mrs. Cliett, not the Hammonds, owns the land in question. Litigation must come to an end. Judgments of Courts must be obeyed. Prevailing parties are entitled to the protection and fruits of the judgments which become final. As Mrs. Cliett persists in challenging the legal effectiveness of the former final judgments and insists upon subjecting the parties to continuous relitigation of matters long since judicially foreclosed, the case is one for the full use of the Courts' fullest powers to make its judgments effective. Coercive sanctions in the form of punishment pending her purging herself by compliance was, and is, proper.

Reversed in part, modified and affirmed in part.