**James G. CLARK, Jr., Sheriff of Dallas County, Alabama, Appellant,**

v.

**Amelia P. BOYNTON et al., Appellees.**

**No. 23157.**

United States Court of Appeals
Fifth Circuit.

July 1, 1966.

T. G. Gayle, Philip Henry Pitts, J. E. Wilkinson, Jr., W. McLean Pitts, Selma, Ala., for appellant.

Peter A. Hall, Birmingham, Ala., Norman C. Amaker, Jack Greenberg, Charles H. Jones, Jr., Charles Stephen Ralston, New York City, for appellees.

Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., amicus curiae.

Before BROWN and COLEMAN, Circuit Judges, and DAWKINS, District Judge.

JOHN R. BROWN, Circuit Judge.

This is another fall out from the Selma, Alabama racial-voter registration crisis of the spring of 1965. The aspect here is the present appeal by Sheriff Clark from an order of the United States District Court holding him in contempt of previous orders issued by Judge Thomas. In the memorandum order of contempt the Court found that Sheriff Clark is "in contempt of this Court's order" and then, of decisive importance here, declared that "he is ordered to pay a fine in the amount of One Thousand Five Hundred Dollars ($1,500.00)."

So preoccupied have the parties been with the contentions pro and con that the fine exceeding, as it does, $300 automatically triggered the jury trial provisions of 42 U.S.C.A. § 1995 [1] which came into being in the 1957 Civil Rights Act,[2] the real deficiency of this record

---

[1]. 42 U.S.C.A. § 1995 provides:
"In all cases of criminal contempt arising under the provisions of this Act [Civil Rights Act of 1957, see note 2, infra], the accused, upon conviction, shall be punished by fine or imprisonment or both: *Provided however*, That in case the accused is a natural person the fine to be paid shall not exceed the sum of $1,000, nor shall imprisonment exceed the term of six months: * * * *Provided further, however*, That in the event such proceeding for criminal contempt be tried before a judge without a jury and the sentence of the court upon conviction is a fine in excess of the sum of $300 or imprisonment in excess of forty-five days, the accused in said proceeding, upon demand therefor, shall be entitled to a trial de novo before a jury, which shall conform as near as may be to the practice in other criminal cases."

[2]. Civil Rights Act of 1957, 71 Stat. 634 (Pub.L. No. 85-315, 85th Cong., 1st Sess.), is now codified in 5 U.S.C.A. § 295-1, 28 U.S.C.A. §§ 1343(4), 1861, 42 U.S.C.A. §§ 1971(b), (c), (g), 1975-1975e, 1995. For legislative history of the Act, see 1957 U.S.CODE CONG. & AD. NEWS p. 1966.

has been overlooked. Indeed, the preargument study of the case led this Court to request the United States Attorney and the Department of Justice to file a brief and appear as amicus because of this apparent deficiency. The simple fact is that no one, simply no one, is able to determine whether this was begun, tried, or ended as a case for criminal contempt, civil contempt, or both, or whether some place down the trail, begun as one it was transmuted into the other. This is, of course, one thing about which there may not be any doubt if a contempt order is to stand. Cliett v. Hammonds, 5 Cir., 1962, 305 F.2d 565.

The result is that the decree must be vacated and the cause remanded for further consistent proceedings. This disposition permits us to severely capsulate the setting of the case and the serious legal issues presented which, for the most part, have never yet been faced.

The injunctive orders of January 23 and 30, 1965, were entered in a private-non-governmental, suit [3] brought as a class action for three classes, (a) Negroes being harassed in their attempt to register to vote, (b) Negroes seeking to vouch for applicants for registration as then required by Alabama law, and (c) citizens being harassed, coerced, etc. "in their attempt to exercise their rights of freedom of speech and assembly designed to persuade voting registrars in Dallas County, Alabama to comply with the Constitution and laws of the United States guaranteeing the right to vote to all citizens."

The orders, purposely phrased by Judge Thomas in nonlegalistic lay terms so all, he said, could understand what was required, spelled out certain procedures to be followed to give control and stability because of the large number of persons assembling near or in the courthouse. These included the formation and composition of the lines of those seeking to register, the assembly and conduct of those assisting or encouraging applicants in their efforts. It is a fair summary to say that the orders undertook to assure the right of peaceful assembly without violence from those in the assembly or the public officers with an affirmative obligation on public officers to afford legal protection to those assembled. But it was careful to make very clear that the conduct of the public officers would have to be genuine and in good faith.[4]

But, as the plaintiffs saw it, things did not change and, on January 28, 1965, they moved for additional relief and for an order to show cause for contempt.[5] On January 30, 1965, the District Court amended its order of January 23, 1965, to clarify the question of how many persons could remain in line for registration. But the plaintiffs, unsatisfied with the turn of events, on February 12, 1965, filed a supplemental motion for additional relief and order to show cause. This set forth in detail the events of February 10, 1965, which formed the basis of the contempt judgment later entered. In brief, this charged that on February 10, a group of Negro children and teenagers peacefully assembled before the Dallas County Courthouse carrying signs urging full and equal voting rights for Negroes. But Sheriff Clark exercising his authority as Sheriff with a group of 15 to 20 of his Deputies surrounded the teenagers and led them through the

---

3. The complaint asserted claims under 42 U.S.C.A. §§ 1971(a), (b), and §§ 1981, 1983, invoking the Court's jurisdiction under 28 U.S.C.A. §§ 1343(3), (4).

4. "This order in no wise is intended to interfere with the legal enforcement of the laws of the State of Alabama, Dallas County, or the City of Selma. But under the guise of enforcement there shall be no intimidation, harassment or the like, of the citizens of Dallas County legitimately attempting to register to vote, nor of those legally attempting to aid others in registering to vote or encouraging them to register to vote."

5. This motion set forth in detail with supporting detailed factual affidavits a number of events which occurred on Monday, January 25, 1965; Tuesday, January 26; Wednesday, January 27. These included arrests of some of the encouragers, the forceful dispersal of the assembly of encouragers, arrests of some prospective registrants, and the like.

streets of Selma and forced the demonstrators to take a march of several miles out in the country at a fast pace, walking and running.

Subsequently, on March 25, 1965, Judge Thomas entered the order requiring that Sheriff Clark on April 26, 1965, "show cause why he should not be held in contempt of this court and punished therefore by fine and imprisonment or both." [6]

The Court thereafter, on April 26, 1965, held an extensive evidentiary hearing without ever expressly ruling on Sheriff Clark's demand for a jury trial.[7] Later, September 2, 1965, Judge Thomas announced his decision. In effect he exonerated Sheriff Clark and his Deputies of disobedience as to the several events prior to February 10. Although the finding was not categorical, he declared, as to the alleged occurrences of January 25–27 (see note 5, supra), that "on most occasions when confronted by the plaintiffs, Sheriff Clark and his deputies acted with propriety and restraint." But, he concluded, "the notable exception to this occurred on February 10, 1965." Of this incident the Court held:

"The demonstrators were not disorderly. About 2:30 p. m., Sheriff Clark and his deputies ordered the group to disperse. The group refused, so they were taken on a 'forced march.' The group was forced to either run or walk at a brisk pace for over four miles. Sheriff Clark and his deputies rode in cars, taking turns walking and conducting the march with posse men. Sheriff Clark himself was in a car at all times while the march was occurring. Several members of the group marching were struck with a cattle prod on the march."

This action, the Court continued, placed Sheriff Clark "in direct contempt of the following portion of" the order of January 23, 1965, and here was set out the portion appearing in note 4, supra. This was followed, in turn, by the express finding of contempt and the order to pay the fine set forth earlier.[8]

Subsequently, the Court overruled motions by Sheriff Clark for new trial. This specifically included his renewed demand for a jury trial.

On brief and in argument, counsel and the amicus struggled mightily to discern from whatever bench marks were available the undisclosed characterization of this proceeding as a criminal or civil contempt in the mind of Judge Thomas. The signs point in many directions. We need not seek them out nor discuss them because, analyzed in terms of whether

6. The prefatory paragraph described the plaintiff's motions as applications for further relief "and for an order to show cause why the defendants should not be held in contempt of this court's order * * * and summarily punished for such contempt." The record (95–96) shows apparently the proposed order with unfilled blanks and unsigned by the Judge, the prefatory paragraph of which, interestingly enough, characterized the plaintiff's motion for supplemental relief and contempt as a petition "to show cause why [the named defendants] should not be adjudged in *civil contempt* of a decree of this court entered * * * on January 23, 1965." (Emphasis added.)

The show cause order as entered did not, either expressly or by incorporation by reference, describe the conduct allegedly in violation of the Court's orders.

7. All parties concede that the demand for a jury trial by Sheriff Clark was timely and adequate.

Between the date of the show cause order, March 25, 1965, and the date of the hearing, the 3-Judge Court (Circuit Judge Rives with District Judges Thomas and Johnson) in United States v. Clark, S.D.Ala., 1965, 249 F.Supp. 720, had issued a broad decree against Sheriff Clark and others to prevent interference with the exercise of civil rights by Negroes in Dallas County.

8. Then followed the final paragraph of the order introduced by this sentence:: "In order to insure effective future compliance with [the] restraining order, the following observations should be borne in mind." These observations included the warning that further excesses on the part of either law enforcement officials or civil rights groups "will be subjected to the mandate of the restraining order of this court."

it is criminal or civil, on no hypothesis does the present record warrant an affirmance. At the same time, this record, revealing in practically uncontradicted terms spectacular action by Sheriff Clark which can hardly be squared with the injunctive order, is a long way from warranting a reversal and rendition for him. Only a brief consideration of the alternatives is necessary to bear this out.

If we proceed on the assumption that what was intended was a criminal contempt, the procedure just does not begin to meet the requirements of the law. There was, first, no apparent consideration of F.R.Crim.P. 42(b).

To begin with, there was no plain statement in the order or other papers showing that the proceeding was one in criminal contempt. The Rule, in requiring that "a criminal contempt * * * shall be prosecuted on notice," provides that (1) "[t]he notice * * * shall state the essential facts constituting the criminal contempt charged and describe it as such" and (2) "[t]he notice shall be given [a] orally by the judge in open court in the presence of the defendant or, [b] on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest."

There is nothing in the record to indicate that a notice meeting these requirements (1) was given by Judge Thomas in open court (2a). Nor did the order to show cause (see note 6, supra, and accompanying text) comply with these requirements (1). Neither was it entered on application of the United States Attorney or of an attorney appointed by the Court for that purpose (2b). The record reflects no designation by the Court of the plaintiffs' attorney to prosecute a criminal contempt.[9]

And in the extensive memorandum opinion order finding Sheriff Clark guilty there is nothing to indicate that these findings were made beyond a reasonable doubt rather than by a mere preponderance of the evidence. See Cliett v. Hammonds, supra, 305 F.2d 570.

■ But even more important, until the question of the § 1995 jury trial provision came up in the motion for new trial after the order of contempt, the record shows absolutely no consideration of the serious question of jury trial for criminal contempt. Quite apart from the application of the § 1995 jury trial de novo provision—a matter on which we express no opinion—the District Court was from the beginning inescapably faced with the problem arising under §§ 402[10]

9. Until this Court on the eve of submission invited the United States Attorney to appear as amicus, the entire burden below and here of sustaining the Court's order and contempt order has been borne by counsel for the private plaintiffs. One of the strong markers pointing away from criminal contempt is the unlikelihood of Judge Thomas having appointed plaintiffs' counsel to carry this prosecutory role in view of the Government's heavy involvement in related and then pending governmental suits against Sheriff Clark and others in this very civil rights voter registration controversy. See United States v. Clark, S.D.Ala., 1965, 249 F.Supp. 720 (3-Judge); Williams v. Wallace, M.D.Ala., 1965, 240 F.Supp. 100 (the United States intervened).

10. 18 U.S.C.A. § 402:
"Any person, corporation or association willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court of the United States or any court of the District of Columbia, by doing any act or thing therein, or thereby forbidden, if the act or thing so done be of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State in which the act was committed, shall be prosecuted for such contempt as provided in section 3691 of this title and shall be punished by fine or imprisonment, or both."
"Such fine shall be paid to the United States or to the complainant or other party injured by the act constituting the contempt, or may, where more than one is so damaged, be divided or apportioned among them as the court may direct, but in no case shall the fine to be paid to the United States exceed, in case the accused is a natural person, the sum of $1,000 * * *."

and 3691,[11] the effect of which is to grant a jury trial for criminal contempt in non-government actions where the actions alleged to have transgressed the order constitute a violation of Federal or State law. On this point we agree with the candid statement by the Government as amicus that if this were a criminal contempt proceeding, the conduct asserted to be contemptuous was, at least arguably, a violation of 18 U.S.C.A. § 242,[12] or of 18 U.S.C.A. § 241,[13] if not of 18 U.S.C.A. § 1509.[14] In either situation, §§ 402 and 3691 assured a jury trial unless it were waived.

■ The result is really no better if we assume it was intended as a civil contempt proceeding. This hypothesis requires, of course, that we disregard as decisive the criminal connotation of the words ordering Sheriff Clark "to pay a fine in the amount of" $1500. This we may do, for reading them as might properly be done as an imprecise, perhaps inaccurate characterization,[15] it is per-

11. 18 U.S.C.A. § 3691:
"Whenever a contempt charged shall consist in willful disobedience of any lawful writ, process, or order, rule, decree, or command of any district court of the United States by doing or omitting any act or thing in violation thereof, and the act or thing done or omitted also constitutes a criminal offense under any Act of Congress, or under the laws of any state in which it was done or omitted, the accused, upon demand therefor, shall be entitled to trial by a jury, which shall conform as near as may be to the practice in other criminal cases."

12. 18 U.S.C.A. § 242:
"Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both."
See United States v. Price, 1966, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 [Mar. 28, 1966]; Edwards v. South Carolina, 1963, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed. 2d 697; Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495; Williams v. United States, 1951, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774.

13. 18 U.S.C.A. § 241:
"If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege se-cured to him by the Constitution or laws of the United States, or because of his having exercised the same;
" * * *
"They shall be fined not more than $5,000 or imprisoned not more than ten years, or both."
See United States v. Price, supra; United States v. Guest, 1966, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 [Mar. 28, 1966].

14. 18 U.S.C.A. § 1509:
"Whoever, by threats or force, willfully prevents, obstructs, impedes, or interferes with, or willfully attempts to prevent, obstruct, impede, or interfere with, the due exercise of rights or the performance of duties under any order, judgment, or decree of a court of the United States, shall be fined not more than $1,000 or imprisoned not more than one year, or both.
"No injunctive or other civil relief against the conduct made criminal by this section shall be denied on the ground that such conduct is a crime."
We have discovered no judicial interpretation of this provision enacted as part of the Civil Rights Act of 1960, 74 Stat. 86 [86th Cong., 2d Sess., Pub.L. No. 86–449, tit. I, § 101]. The legislative history indicates that its primary purpose is to reach interference with school desegregation orders by individuals who are not parties against whom the orders were issued, nor acting in concert with such parties, and who are thus not usually subject to contempt sanctions. See 1960 U.S.CODE CONG. & AD. NEWS, pp. 1941–1942. We express no opinion on the ultimate applicability of this section either generally or as to Sheriff Clark's conduct.

15. In its recent decision in Shillitani v. United States, 1966, 384 U.S. 364, 86

missible under some circumstances for the Court to require a civil contemnor to be required to pay a specific sum, not as a sanction to assure further compliance, but as compensation to or offset of damages of the adversary because of a past dereliction. The Supreme Court has made this clear. "We have no doubts concerning the power of the District Court to order respondents, in order to purge themselves of contempt, to pay the damages caused by their violations of the decree," for "[t]he measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief" which may include "the payment of money." McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 193–194, 69 S.Ct. 497, 500, 93 L.Ed. 599, 605. And in United States v. United Mine Workers, 1947, 330 U.S. 258, 303–304, 67 S.Ct. 677, 701, 91 L.Ed. 884, 918, the Court said: "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." The controlling principle here is that "Where compensation is intended, a fine is imposed, payable to the complainant." Ibid.

 Of course, several things are required if a compensatory "penalty" is to be imposed in a civil contempt. One certainly is a clear indication of the party to whom it is to be paid. Another is a sufficient record basis for the propriety of such an award and, in a broad sense at least, the amount of it. Ordinarily, of course, the civil contempt fine "must not exceed the actual loss to the complainant caused by respondent's violation of the decree in the main cause plus complainant's reasonable expenses in the proceedings necessitated in presenting the contempt for the judgment of the court." Parker v. United States, 1 Cir., 1946, 153 F.2d 66, 71, 163 A.L.R. 379, approved Boylan v. Detrio, 5 Cir., 1951, 187 F.2d 375, 379. See, e. g., Yanish v. Barber, 9 Cir., 1956, 232 F.2d 939, 944; United States v. Montgomery, D.Mont. 1957, 155 F.Supp. 633, 637.

Neither of these is here met. The order is silent as to whom the fine it to be paid. More important, if, as certainly might properly be the case, it was thought this was a means of defraying costs and expenses incurred by the private plaintiffs in working up the show cause order and the proof on the hearing thereof, there ought to have been some formal proof on these subordinate elements.

 It is evident therefore that the present findings, as such, cannot stand. Except to encourage to the maximum extent possible consistent with the rights of the parties the fullest use of the present record supplemented as might be necessary on the further hearings to be held below, we do not undertake to blueprint the nature and character of those proceedings on remand. If the District Court concludes that a charge for criminal contempt is to be asserted, then all of the safeguards required by F.R. Crim.P. 42 and the law must be assured. Panico v. United States, 1963, 375 U.S.

S.Ct. 1531, 16 L.Ed.2d 622 [June 6, 1966], the Supreme Court again undertook the difficult task of divining retrospectively whether criminal or civil contempt was intended. Stating the relevant test as being "what does the court primarily seek to accomplish by imposing sentence?", the Court noted:

"The fact that both the District Court and the Court of Appeals called petitioners' conduct 'criminal contempt' does not disturb our conclusion [that the contempt was civil]. Courts often speak in terms of criminal contempt and punishment for remedial purposes. * * * 'It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish' civil from criminal contempt." 384 U.S. at 369, 86 S.Ct. at 1535, 16 L.Ed. 2d at 626–627. Accord, United States v. United Mine Workers, 1947, 330 U.S. 258, 297 n. 64, 67 S.Ct. 677, 698 n. 64, 91 L.Ed. 884, 914 n. 64.

29, 84 S.Ct. 19, 11 L.Ed.2d 1; Cliett v. Hammonds, supra. These safeguards include, as appropriate, a jury trial under 18 U.S.C.A. §§ 402, 3691.[16] And now, by virtue of the Supreme Court's recent decision in Cheff v. Schnackenberg, 1966, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 [June 6, 1966], a jury trial is also necessary where the penalty to be imposed for criminal contempt exceeds that provided for petty offenses.[17] If, on the other hand, the Court intends that this be for civil contempt, the relief must be similarly oriented with, of course, appropriate record proof. This is certainly true as to any compensatory penalty awarded to the complainants or counsel for these past alleged derelictions, especially since, at this date and the passage of intervening legislation and other developments,[18] further compliance with the injunctive orders is neither needed nor facilitated by typical money sanctions to coerce compliance.

Vacated and remanded.[19]

16. Although we find it unnecessary at this stage to pass on the asserted applicability of the jury trial provisions of § 1995, our leaving it open does not foreclose the possible applicability thereof.

17. Thus, the view—characterized as "dictum"—expressed by some unidentified members of the Court in footnote 12 of United States v. Barnett, 1964, 376 U.S. 681, 695 n. 12, 84 S.Ct. 984, 991 n. 12, 12 L.Ed.2d 23, 32–33 n. 12, that, without regard to the seriousness of the offense, punishment by summary trial without a jury would be constitutionally limited to that penalty provided for petty offenses, has now been transformed into a rule applicable to federal court contempt trials through "the exercise of the Court's supervisory power and under the peculiar power of the federal courts to revise sentences in contempt cases." Cheff v. Schnackenberg, supra, 384 U.S. at 380, 86 S.Ct. at 1526, 16 L.Ed.2d at 634. Relying on the classification established by 18 U.S.C.A. § 1, the Court held that sentences exceeding six months' imprisonment exceed the penalty provided for petty offenses and thus require a jury trial. Neither here nor in *Barnett* did the Court, concerned primarily with the risk of long prison terms, address itself to the problem whether the $500 fine provision of § 1 likewise becomes a maximum.

18. This includes, perhaps most significantly, the Voting Rights Act of 1965, 79 Stat. 437, 42 U.S.C.A. § 1973 et seq. and the administrative action of the United States Attorney General and the Director of the Bureau of the Census, including the determinations pursuant to §§ 4(b) (1), (2) of the Act that tests or devices as defined in § 4(c) were maintained in Alabama and that less than 50% of the citizens of voting age participated in the 1964 election, 30 Fed.Reg. 9897 (Aug. 7, 1965), and the appointment, triggered by those determinations, of federal examiners for Dallas County, 30 Fed.Reg. 9970 (Aug. 10, 1965).

19. As the matter has been directly raised and a ruling thereon is vital to the further proceedings on remand, we need but state that we are of the clear view that the injunction was sufficiently definite in what it ordered and forbade, F.R. Civ.P. 65(d), to support contempt proceedings, civil or criminal.