IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 10, 2024 Session

## BENJAMIN L. FOLKINS ET AL. v. HEALTHCARE GROUP (HONG KONG) CO. LIMITED ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 17-0175        Kyle E. Hedrick, Judge**

_____

**No. E2023-00759-COA-R3-CV**

_____

Defendants appeal from a trial court judgment finding the defendants in civil contempt of a bond order securing a judgment against those defendants and others. Because the underlying judgment on which the contempt finding is based has since been vacated by this Court, the contempt finding is also vacated.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

W. Neil Thomas, III, and Michael M. Thomas, Chattanooga, Tennessee, for the appellant, China Beds Direct, LLC.

A. Philip Lomonaco, Lenoir City, Tennessee, for the appellant, Healthcare Company Limited.

Michael J. King and Lindsey M. Collins, Knoxville, Tennessee, for the appellant, Healthcare Group (Hong Kong) Co., Limited.

George T. Lewis, Memphis, Tennessee, and Nicholas W. Diegel, Knoxville, Tennessee, for the appellant, Zhanggen (James) Ni.

Gary R. Patrick, Susie Lodico, and Cara J. Alday, Chattanooga, Tennessee, for the appellees, Benjamin L. Folkins and Upward Mobility, Inc.

# OPINION

## BACKGROUND

This is the parties' second time before this Court. In the first appeal ("*Folkins I*"), this Court vacated the lower court's final judgment and remanded the case for a new trial after determining that the trial court erred in denying the defendants' motions for a mistrial. *Folkins v. Healthcare Grp. (Hong Kong) Co., Ltd.*, No. E2022-00264-COA-R3-CV, 2023 WL 8016121, at \*1 (Tenn. Ct. App. Nov. 20, 2023).[1] *Folkins I* contains helpful background regarding the parties' corporate structure:

> This case arises from a business divorce. Ben Folkins and his wife, Andrea Folkins, have worked in mattress sales and distribution for many years. Their Tennessee-based business is Upward Mobility, Inc. d/b/a Bed Boss ("Bed Boss"). In approximately 2009, Bed Boss began ordering its mattresses from Healthcare Company, Limited ("Healthcare Co."), a manufacturer in China. At that time, Zhanggen "James" Ni (hereinafter, "Ni") owned Healthcare Co., and it was not a publicly traded corporation. Ni's memory foam pillow and mattress line, MLILY, was already successful in China and Europe but lacked presence in the United States market. After meeting in 2009, Ni and Mr. Folkins decided to go into business together to bring MLILY mattresses to the United States. While Ni handled manufacturing, Mr. Folkins spearheaded the marketing and distribution of MLILY in the United States.
>
> Healthcare Group (Hong Kong) Co., Ltd. ("Group") is a wholly owned subsidiary of Healthcare Co. Ni describes Group as a holding company and investment platform that made it easier for Ni to manufacture and export mattresses made by Healthcare Co. to the United States. When Ni and Mr. Folkins decided to go into business together, they did so by forming China Beds Direct, LLC ("CBD"). Group and Mr. Folkins were CBD's only members. Mr. Folkins contributed $45,000 and initially had a 45% membership interest in CBD, while Group contributed $55,000 and had a 55% membership interest in CBD. In 2011, the parties signed an operating agreement drafted by Mr. Folkins. Early in their relationship, Ni explained that he wished to take Healthcare Co. public on the Shanghai Stock Exchange and that CBD's success would help with Healthcare Co.'s initial public offering ("IPO"). Accordingly, CBD's financial success was very important.
>
> CBD earned approximately 2.5 million dollars in profits in its first year and approximately 6.9 million dollars in profits in 2013. In order to make CBD

---

[1] The Defendants filed an appeal to our Supreme Court, but the application was untimely, and the appeal was dismissed.

and MLILY a quick success, Mr. Folkins diverted a lot of resources from his own mattress business, Bed Boss, to CBD. For example, Mr. Folkins persuaded various Bed Boss customers to purchase from CBD, and CBD used Bed Boss's United States Customs and Border Protection and FedEx accounts to efficiently import products from China. CBD also utilized Bed Boss employees. Healthcare Co. produced mattresses for both CBD and Bed Boss, and Ni ensured that CBD had favorable payment terms so CBD could turn a profit quickly.

Although CBD was successful and the parties worked together with relative ease for a few years, problems eventually arose.

*Id* at *1. In 2017, Ben Folkins and Upward Mobility (hereinafter, "Appellees") filed suit against Ni, Healthcare, Group, and CBD (hereinafter, "Defendants" or "Appellants") in the Chancery Court for Hamilton County (the "trial court"). The case proceeded to a jury trial in August of 2021.

The trial lasted over a week. Following deliberations, the jury returned its verdict, finding largely in favor of Plaintiffs. In relevant part, the jury found that the corporate veil should be pierced as to Group, Healthcare Co., and Ni; Group breached the 2016 operating agreement by refusing to pay Mr. Folkins pursuant to the buyout provision; Defendants intentionally interfered with Bed Boss's business relationships; CBD was unjustly enriched at Bed Boss's expense; Defendants acted intentionally or maliciously; and Bed Boss owed CBD over a million dollars for unpaid goods shipped to Bed Boss. The trial court entered a final judgment on August 30, 2021. Defendants then timely filed motions for new trial and judgment notwithstanding the verdict and engaged in further litigation regarding attorney's fees in front of a special master. On February 8, 2022, the trial court entered an amended final judgment adopting the special master's report and awarding Mr. Folkins $977,634 in attorney's fees and $74,744 in litigation expenses. The trial court also assessed $11,516,067.58 in punitive damages against Healthcare Co. and Ni.

*Id.* at *7.

While *Folkins I* was pending in this Court, Appellees sought post-judgment discovery in the trial court regarding Defendants' assets. According to Appellees, Defendants were transferring various of their assets to avoid the judgment. For example, Appellees claim in their brief that CBD closed one of its Tennessee bank accounts and moved the funds to a North Carolina bank. Appellees secured a temporary injunction to prevent such transfers. Appellees also allege in their brief that Appellants failed to

cooperate in post-judgment discovery by refusing to respond to discovery requests and subpoenas and by failing to attend depositions.

Finally, the parties entered into an agreed order (the "Bond Order") requiring Appellants to post an appeal bond while *Folkins I* remained pending. It is the language of this Bond Order that forms the basis of the current appeal. The Bond Order, which was negotiated by the parties and entered on August 23, 2022, provides that stock in two of Appellants' affiliated subsidiaries, MLILY and Globed, Inc. ("Globed"), would serve as bond to stay execution of the judgment. MLILY is a mattress sales platform that is, essentially, CBD's successor entity. MLILY is wholly owned by Group. Globed is a company wholly owned by Healthcare, whose sole asset is a controlling ownership interest in Mor Furniture for Less, Inc., a west coast retail chain.

As relevant, the Bond Order provides:

3. The original stock certificates of Globed, which represents 100% of the issued and outstanding stock/ownership in Globed, and the original stock certificates of MLily, which represents 100% of the issued and outstanding stock/ownership of MLily, shall be held by the Clerk of this Court as security for the judgment obtained by the Plaintiff against the Defendants. Such stock certificates, along with the cash that has previously been deposited with the Clerk's office, shall be treated as the appeal bond posted in favor of the Plaintiff for the appeal that is pending in this case. To the extent necessary, the Plaintiff is hereby granted a first lien upon and security interest in 100% of the issued and outstanding shares of stock of Globed and MLily. This Order shall serve as public notice of Plaintiff's security interest and priority in all of the stock certificates of Globed and MLily and Plaintiff may file a UCC to further perfect its security interest in said stock. The Defendants shall not issue nor create any additional stock or grant any additional ownership interest in Globed nor MLily, besides those stock certificates being delivered to the Clerk of this Court.

4. Upon the delivery to the Clerk of this Court of all of the issued and outstanding stock of Globed and issued and outstanding stock of MLily, the Plaintiff will cease all collection efforts against the Defendants and China Beds Direct, LLC, as long as all of the terms of this Order have been and continue to be satisfied. This includes any and all collection efforts in other states and Plaintiff's counsel in any and all other states will cease any pending collection efforts within five (5) business days of delivery of the stock to the Clerk of this Court.

5. Plaintiff will not seek any additional attorney fees as a sanction associated with any motions for contempt or motions to compel related to any collection

- 4 -

efforts going forward, as long as all terms and conditions of this Order are complied with and satisfied. Notwithstanding anything else to the contrary contained in this Agreed Order, Plaintiff is not waiving any claim for attorney fees incurred on his collection efforts through the date of this order and incurred on all appellate work, including but specifically not limited to any attorney fees incurred after the date through which attorney fees were last awarded by the Clerk & Master.

6. Once the Court of Appeals decision in this case becomes final or, if the matter has been appealed to the Tennessee Supreme Court, the Tennessee Supreme Court's decision is issued, either on permission to appeal or on the merits, and if the Plaintiff has any monetary judgment after such appeal, Plaintiff and Defendants will have two weeks within which to reach an agreement regarding the payment of any such monetary judgment before release of the stock certificates by the Clerk to the Plaintiff for execution. Until such time, i.e., pending appeal, the Defendants, and their subsidiaries and affiliates, including specifically, but not limited to Globed, Mor Furniture for Less, Inc. ("Mor Furniture") and MLily, will not dispose of any of their assets nor take any action outside their ordinary course of business. The Defendants acknowledge that Mor Furniture for Less Inc. is an asset of Globed and that Globed is the majority owner of Mor Furniture, and accordingly, Globed shall not dispose of any assets of Mor Furniture for Less that is owned by Globed nor allow the assets of Mor Furniture to be disposed of outside the ordinary course of business to the extent it can legally do so as provided for under the laws of the State of California. For purposes of this Order, "ordinary course of business" means selling furniture, mattresses, bedding supplies to customers, replenishing inventory and payment of all other ordinary operating expenses, such as payroll, insurance, shipping, etc. Specifically included in the ordinary course of business is any information technology/software expenses.

*       *       *

9. Notwithstanding anything to the contrary contained herein, no cash payments nor transfers of monies shall be made to the Defendants that would cause such transfer of monies to be made and delivered outside of the United States of America, except for payment of current deliveries and sales of inventory by Healthcare Co. In other words, to the extent, and only to the extent, that current inventory is being sold by Healthcare Co. to an affiliate or subsidiary located in the United States of America, such subsidiary or affiliate may pay for the current delivery of such inventory. Payments for all past or prior sales shall not be permitted.

On February 23, 2023, Appellees filed a motion for contempt, arguing that defendants Healthcare and Group violated the Bond Order. Appellees argued that in November of 2022, MLILY made over seven million dollars' worth of payments to Appellants' affiliates and subsidiaries outside of the United States. Appellees further claimed that "Defendants violated the Bond Order both by making payments for old invoices predating the Bond Order, some as far back as September 2021, and by prepaying invoices outside the ordinary course of business, both of which are violations of the Bond Order." Appellees claimed that MLILY violated sections six and nine of the Bond Order by paying old invoices that were not "current inventory." According to Appellees, section nine's purpose is "to keep the Defendants' U.S. assets, including cash and equity they have in their U.S. subsidiaries and affiliates, from disappearing overseas where they would be inaccessible to Plaintiff for the satisfaction of his judgment." Appellees claimed that by paying old invoices pre-dating the Bond Order, and by pre-paying for inventory that it did not yet have, Defendants were affecting an end-run around the Bond Order through MLILY. Stated differently, Appellees asserted that Appellants were draining MLILY's assets to deplete MLILY as a source of recovery for Appellees.

The trial court agreed with Appellees. Following a hearing, the trial court entered an order on April 27, 2023, concluding that the Defendants were trying to avoid Appellees' collection efforts prior to the entry of the Bond Order and that even after its entry, "defendants have willfully and intentionally acted to violate the order." The trial court ordered Healthcare and Group to deposit $8,545,561.56 with the Clerk and Master and ordered those defendants to pay Appellees' attorney's fees incurred in obtaining compliance with the Bond Order. Counsel for Appellees filed their application for attorney's fees on May 26, 2023, which reflected 376.6 billed hours related to the contempt proceedings. On July 21, 2023, the trial court entered an order awarding Appellees $130,614.50 in attorney's fees.

## ISSUES

Ni and CBD both filed briefs claiming that the trial court made no findings of contemptuous conduct on their parts. Out of an abundance of caution, they both also argue that the correct remedy was not contempt, but rather for the trial court to lift the Bond Order and allow Appellees to resume collection efforts. For its part, Healthcare raises several issues on appeal regarding the trial court's ruling. Nonetheless, this Court has determined that the following issue is dispositive:

I. Whether the contempt ruling should be vacated because the underlying judgment upon which the Bond Order was based has been vacated by this Court.

DISCUSSION

*Contempt*

While Defendants raise a host of issues regarding the propriety of the trial court's contempt, the Bond Order's proper construction, and the attorney's fees award, Appellees frame the issue differently. According to Appellees, because the underlying judgment which the Bond Order secured has been vacated, any attendant contempt ruling falls with the judgment. While this Court has found no case law factually on point to the case at bar, several of this Court's unreported opinions support Appellees' contention.

For example, in *Tennessee Department of Health v. Boyle*, No. M2001-01738-COA-R3-CV, 2002 WL 31840685 (Tenn. Ct. App. Dec. 19, 2002), the health department sued a women's clinic, alleging the clinic did not have the proper licensure and certification. During the ensuing litigation, the trial court enjoined the clinic from operating without the correct license; nonetheless, the clinic continued operating and was later held in contempt. *Id.* at *2. The trial court assessed monetary fines against the clinic and ordered it to pay the health department's attorney's fees. *Id.* The trial court later permanently enjoined the clinic from operating, and the clinic appealed. *Id.* at *3. On appeal, this Court determined that the statutes on which the health department relied in arguing that the clinic was operating illegally were unconstitutional and could not be enforced. *Id.* at *8. Based on that ruling, this Court went on to conclude that the contempt finding could not stand:

> Ordinarily if a court issues an injunction, the parties enjoined must obey it, even if they believe the statute on which the injunction was based is unconstitutional. This is called the Collateral Bar Rule. *See Howat v. Kansas*, 258 U.S. 181 (1922). Thus, even if the injunction was improvidently granted, the order must be obeyed, and disobedience of the injunction may be punished. *Walker v. City of Birmingham*, 388 U.S. 307 (1967).
>
> This rule, however, does not apply to civil contempt. In *United States v. United Mine Workers of America*, 330 U.S. 258 (1947), the Court said "the right to remedial relief falls with an injunction which events prove was erroneously issued." The Court reasoned that since the civil contempt sanction is for the benefit of the other party, a plaintiff was not entitled to profit from an order that is subsequently reversed. Apparently this question has not been decided before in Tennessee, but other courts have followed the rule laid down in *Mine Workers*. In *Cliett v. Hammonds*, 305 F.2d 565, 570 (C.A. 5th Cir.Tex.1962), the Court said, "In contrast, civil contempt falls with the order if it turns out to have been erroneously or wrongfully issued."

*Id.* Accordingly, the trial court's original ruling was reversed, and the related contempt ruling was disposed of with it. *Id.* Similarly, in *Luttrell v. Wassenberg*, No. W2017-02443-COA-R3-CV, 2020 WL 3867131, at *9 (Tenn. Ct. App. July 9, 2020), this Court reversed a trial court's assessment of sanctions and attorney's fees against a father for violating a modified parenting plan after determining that the modified plan must be vacated. *See also Gider v. Hubbell*, No. M2016-00838-COA-R3-JV, 2017 WL 1536475, at *5 (Tenn. Ct. App. Apr. 27, 2017) (reaching a similar conclusion, noting that "because the portion of the January 2015 injunction preventing [m]other from posting anything related to the child's behavior is unconstitutionally overbroad, violation of that portion of the order cannot form the basis for civil contempt").

These rulings are consistent with the rulings of other jurisdictions, the common thread being reliance on the Supreme Court's opinion in *United States v. United Mine Workers of America*, 330 U.S. 258 (1947). *See, e.g.*, *United States v. Hendrickson*, 822 F.3d 812, 821 n.2 (6th Cir. 2016) ("When the underlying order in a civil contempt proceeding is invalidated, the contempt adjudication falls along with it." (citing *United Mine Workers*, 330 U.S. at 295)); *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1356 (Fed. Cir. 2015) (same); *Latrobe Steel Co. v. United Steelworkers of Am., AFL-CIO*, 545 F.2d 1336, 1342 (3d Cir. 1976) ("The general rule is that whether a contempt judgment survives the avoidance of an underlying order depends on the nature of the contempt decree. If the contempt is criminal it stands; if it is civil it falls.").

This Court is constrained to follow the prevailing rule. Here, the underlying judgment which the Bond Order secured has been vacated; as such, the Bond Order is a nullity and serves no purpose. The contempt ruling at issue stems from the Bond Order and is thus inextricably tied to and dependent upon the viability of the underlying judgment. As the above-listed precedent makes clear, a civil contempt ruling falls with the underlying judgment. Simply put, Defendants cannot be in contempt of a Bond Order securing a judgment that no longer exists. Consequently, the trial court's ruling holding Defendants in contempt and assessing fines and attorney's fees is vacated. The remaining issues on appeal, all of which deal with the propriety of the contempt ruling, are pretermitted and need not be addressed.

## CONCLUSION

The judgment of the Chancery Court for Hamilton County is hereby vacated, and this case is remanded for further proceedings consistent with this opinion. Costs on appeal are assessed to the appellants, Healthcare Company Limited, Zhanggen (James) Ni, Healthcare Group (Hong Kong) Co., Limited, and China Beds Direct, LLC, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE