**FOX v. CAPITAL CO. et al.**

No. 6472.

Circuit Court of Appeals, Third Circuit.

April 25, 1938.

Daniel G. Rosenblatt and Murry C. Becker, both of New York City, and Cole & Cole, of Atlantic City, N. J., for appellant Eva Fox.

Walter Hanstein, of Atlantic City, N. J., for appellees Capital Co. and Chicago Title & Trust Co.

Wm. Elmer Brown, Jr., of Atlantic City, N. J., for appellee Hiram Steelman, trustee in bankruptcy for William Fox.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the proceedings under 21a of the Bankruptcy Act, 11 U.S.C.A. § 44(a), in the Matter of William Fox, bankrupt, Eva Fox, the appellant, appeared in the referee's court, in obedience to a subpoena, on August 25, 1936, and after testifying for some time, "she practically went to pieces mentally and physically," lost her voice, and was apparently a mental and physical wreck. She was excused, with direction by the referee to appear the following day to testify.

That night of the 25th, Dr. William W. Hersohn, of Atlantic City, N. J., who had been attending Mrs. Fox for over a year, examined her and wrote a certificate to be presented to the court the following day, in which he said:

"Although she is not a healthy woman, I have never seen her look like I found her this evening at six o'clock when I received an urgent call to attend her. She was seriously upset mentally, extremely nervous, and complaining of great intensity of her symptoms. I solicited the information that she practically went to pieces mentally and physically, while in court today. She was especially upset over the fact that she couldn't understand why she would have a rapid pounding heart, a thumping in the chest, hoarseness, and inability to understand or answer simple questions.

"Her physical condition is the complete answer to this."

He closed the certificate by saying: "May I ask, as a physician interested in the welfare of his patient, that Mrs. Fox be excused from further testimony, until such time that her physical condition so warrants. To compel her to appear for examination at this time would likely lead to her complete collapse."

The following morning, August 26th, this certificate was presented to the referee,

who appointed Dr. W. J. Carrington of Atlantic City, N. J., to examine Mrs. Fox. He did so that evening in the presence of Dr. Hersohn, who in an affidavit said that, "At the conclusion of his examination Dr. Carrington agreed with me that it would be much better if Mrs. Fox did not have to go to court for a period of one or two weeks and then only if her condition was improved and she was properly protected by the referee and was shown special consideration and treatment because of her condition." This was partly denied by Dr. Carrington, who said in his report to the referee that, "I can see no organic reason why the patient should not testify in court. Because of her tendency toward nervousness, aggravated by the menopause, I might suggest that unusual consideration be shown in the manner of questioning and that whenever possible the answers to questions be obtained from other sources."

The referee stated at the opening of court that she would not be excused from testifying, and directed counsel to have Mrs. Fox in court to testify at the adjourned hearing on Tuesday, September 1, 1936, at 10 o'clock in the morning. She was not present in court at the time suggested, and the referee directed Dr. Carrington to examine her again that day. This he did in the presence of Dr. Hersohn at 1 o'clock that afternoon. Dr. Hersohn says that Mrs. Fox at that time had not improved, and that she was unable to appear and testify in court. He said as her personal physician: "I have advised Mrs. Fox that it would be extremely dangerous to her health to go to court and testify in her present condition." He says that Dr. Carrington then and there agreed with him. Dr. Carrington again denied this.

The following day Dr. Samuel Ritter, of New York City, who had been attending Mrs. Fox for two and a half years, examined her. He said that she was suffering from the menopause, and was bordering on a complete nervous breakdown, and that "any unusual mental or physical strain such as testifying in court, would, at this time result in very serious consequences. Menopausal insanity is not an uncommon result in situations of this kind," etc.

Dr. Carrington, as well as Dr. Hersohn, said that in the examinations Mrs. Fox had been "exceedingly cooperative." The referee certified Mrs. Fox to the District Court for contempt because of her failure to appear as directed, and that court, on April 29th, adjudged her to be in contempt of it and of the referee in bankruptcy, and ordered her to appear before it on June 4, 1937, to receive sentence. It further ordered that if she appeared before the referee in bankruptcy before that time and produced with her certain books, papers, records, and documents, she would be considered as purging herself of contempt.

The court did not say whether it found her to be guilty of criminal contempt or of civil contempt. It probably had in mind civil contempt, for the punishment which the opinion indicated might be imposed is appropriate to a finding of civil contempt. Thereafter, an appeal was taken to this court, which was argued on December 6, 1937.

■■ While this court recognizes that it is the function of the District Court to find the facts which are usually binding upon the appellate court, yet in view of the fact that all the physicians had found that Mrs. Fox was "exceedingly cooperative," seemed willing herself to testify, if she could; that there was no contradiction that she had been advised by both of her physicians that it was dangerous to her health to go into court and testify; that a large part of the evidence upon which the finding of contempt was based was taken before the referee only; and in view of the further fact that eminent physicians had reached contrary conclusions upon the same facts as to the effect testifying in court would have upon her, we desired to know whether or not she could now with safety to her health appear before the referee and purge herself of the alleged contempt. Consequently, we asked Dr. Ross V. Patterson, dean of the Jefferson Medical College and Hospital of Philadelphia, a physician who knew none of the parties here involved and who has a national reputation in the practice of nervous and menopausal conditions, to make an independent examination of Mrs. Fox for the court. He did so, and submitted a report in writing to us. He said that his examination consumed an hour and a half; that Mrs. Fox was in bed and no one else was present; that before the examination he did not talk with a physician or any one else about her condition; and that he found no evidence of simulation on her part or any unwillingness to testify. A copy of his report was submitted by the court to counsel of both parties, and the dean himself was present in court and an opportunity was given to counsel on both sides to examine

him, but counsel for appellee declined to do so. Among other things in his report and testimony the dean said that Mrs. Fox "cooperated apparently without reserve, in the examination and in giving all information requested in so far as she seemed able to do." He further said that: "I am of the opinion that Mrs. Fox is incapable of giving reliable, dependable, or accurate testimony in any matter of any complexity; her memory is too defective, her mental disturbance too great to make this possible. Her condition doubtless varies somewhat from time to time. Second, if compelled to appear, or even appearing voluntarily, would entail a strain, the results of which might be serious. A fatal attack of angina is not impossible. Less serious symptoms are likely, though I cannot say they are certain to occur."

There is practically no substantial difference between the doctors as to the facts they found. In speaking of the findings of Dr. Hersohn, Dr. Carrington said: "I agreed thoroughly with his findings". All the physicians, Dr. Hersohn, Dr. Ritter and Dr. Carrington, practically agreed as to her condition and that she fully cooperated with them in the various examinations, but Dr. Carrington differed with the others as to the effect that testifying in court might have upon her. He does not seem sure of his conclusion, however, and as stated before, rather apologetically says: "Because of her tendency toward nervousness, aggravated by the menopause, I might suggest that unusual consideration be shown in the manner of questioning and that whenever possible the answers to questions be obtained from other sources."

The District Court was in error when it said that "the physicians entirely disagree," unless he confined the disagreement to the effect testifying in court might have upon Mrs. Fox. Dr. Hersohn said that "Dr. Carrington and I discussed the matter (the examination of Mrs. Fox) and then Dr. Carrington called Referee Steedle on the telephone in my presence and advised Mr. Steedle that I was present when such telephone conversation was taking place. In the course of that conversation with Mr. Steedle, Dr. Carrington stated that he agreed with my findings and also agreed that Mrs. Fox was in a bad nervous and mental condition. He stated to Referee Steedle that he differed with me only in respect to the fact as to whether or not more harm or good would come to Mrs. Fox from

testifying or from remaining home without testifying, with the constant thought that at some time in the future she would have to testify." Dr. Carrington said that was correct, except that he did not use the word "mental."

■ If the court intended to adjudge Mrs. Fox guilty of criminal contempt, it erred for the reasons stated in the case of In re Fox, Herbert Leitstein v. Capital Company and Chicago Title & Trust Company, 3 Cir., 96 F.2d 23. But if it intended to adjudge her guilty of civil contempt, as it most probably did, the evidence was not sufficient to justify such conclusion. The plaintiff has a heavy burden to show a defendant guilty of civil contempt. It must be done by "clear and convincing evidence," and where there is ground to doubt the wrongfulness of the conduct of the defendant, he should not be adjudged in contempt. California Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 5 S.Ct. 618, 28 L.Ed. 1106; General Electric Co. v. McLaren, C.C., 140 F. 876; Hanley v. Pacific Live Stock Co., 9 Cir., 234 F. 522; Electro-Bleaching Gas Co. v. Paradon Engineering Co., Inc., D.C., 15 F.2d 854.

Proof that Mrs. Fox was well enough to testify without serious danger to her health rests alone upon the opinion of Dr. Carrington, who really did not seem sure of his conclusions, for he suggested that "unusual consideration" be shown in the manner of questioning, and that whenever possible the answers to questions be obtained from other sources.

There is no doubt that Mrs. Fox, when called to testify, was in a very nervous condition, tired, exhausted; that she was more nervous when Dr. Carrington examined her on September 1, 1936, than when he examined her on August 26, 1936; that she did not sleep at night; that when she attempted to testify, she had a nervous breakdown, lost her voice, her memory, and could not understand simple questions; that Dr. Hersohn had never seen her look like she did the evening after she attempted to testify; that she has severe headache and the symptoms accompanying the menopause; and that all these are not simulated, but real, for she was "exceedingly cooperative" in the examination. From these uncontroverted and admitted facts, two reputable physicians say that she could not at that time have testified without risking serious physical and mental consequences.

We think it was not established by that clear and convincing proof which the law requires that she was guilty of any contempt because she failed to appear and testify as directed to do by the referee.

Dr. Patterson says that she is not now able to appear and testify without risking serious consequences, and that if she does so, her mental and physical condition is such that "Mrs. Fox is incapable of giving reliable, dependable, or accurate testimony in any matter of any complexity; her memory is too defective, her mental disturbance is too great to make this possible." It is further his opinion that she was not able to testify when directed to do so.

The order adjudging the appellant guilty of contempt is reversed, but the creditors are entitled to have Mrs. Fox testify and answer any questions relating to any transaction with the bankrupt when she is mentally and physically able to do so without serious risk to her health.

Accordingly, we remand the cause to the District Court for due procedure in accordance with this opinion.