**Dick GREGORY, Appellant,**

v.

**Larry D. DEPTE, Sandra L. Henderson and Correction Connection, Inc.**

**Nos. 89-1260, 89-1688.**

United States Court of Appeals, Third Circuit.

Argued Oct. 17, 1989.

Decided Feb. 14, 1990.

James B. Crummett, James B. Crummett & Associates, Philadelphia, Pa., Dennis J. Clark, Maura D. Corrigan (argued), Plunkett & Cooney, P.C., Detroit, Mich., for appellant.

Luther E. Weaver, III (argued), Michael J. Churchill, Stella M. Tsai, Baskin, Flaherty, Elliott & Mannino, Philadelphia, Pa., Gregory B. Montgomery, Camden, N.J., for appellees.

Before BECKER, COWEN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Plaintiff in the district court, Dick Gregory, appeals two sanctions imposed by the district court in its February 27, 1989, order finding him in contempt of its November 29, 1988, consent preliminary injunction.[1] The preliminary injunction applied to both plaintiff and defendants and required them to maintain the "status quo" that existed before this lawsuit with respect to a licensing agreement between the parties. The injunction did not further define the "status quo."

The background of this tortuous litigation is important. On January 7, 1987, plaintiff entered into a licensing agreement (the Agreement) with Correction Connection, Inc. (CCI) which granted CCI "an exclusive license throughout the United States ... to market, distribute and sell" many of plaintiff's copyrighted products, including the diet mix involved in this case. CCI was authorized to sell the diet products through retail and/or multilevel marketing channels. In exchange, plaintiff re-

---

1. Although plaintiff's attorney was also found in contempt, we will limit our discussion to appellant, Dick Gregory.

ceived royalties from such sales. Under the terms of the Agreement, plaintiff reserved "all rights to distribute, sell and exploit the [diet product] through mail orders."

There was no definition of "mail orders" in the Agreement. Evidence in the record indicates that until the contempt hearing, plaintiff's mail order operation consisted almost exclusively of very small monthly sales directly to consumers. The only exception to this consumer-oriented mail order operation occurred sometime in the fall of 1988. During that fall, plaintiff's company began negotiations with one Sergio concerning a large mail order purchase program to be conducted through cable television stations. Plaintiff testified that the terms of this contract are that he is to supply Sergio with 700,000 cans of the diet product every six months, and Sergio is responsible for mailing the product monthly to consumer subscribers. Although plaintiff's testimony on this issue is somewhat vague, he implied that the Sergio contract has not yet been implemented.

On October 18, 1988, plaintiff filed a complaint in the district court seeking damages, injunctive relief and termination of the Agreement. The complaint alleged that CCI and several of its officers conspired to defraud plaintiff of his ownership interest in CCI, injured his business reputation and breached the Agreement by failing to pay him his contractual royalties. CCI and the individual defendants filed an Answer and Counterclaims, alleging that Gregory had, *inter alia,* failed to perform his own obligations under the Agreement.

After protracted legal skirmishing, but no recorded court action, the court approved a Stipulation and Proposed Order on November 29, 1988, presumably pending final decision. The Order, *inter alia,* required the parties "to maintain the status quo that existed before this lawsuit," enjoined them "from contacting any suppliers, distributors, agents, etc.," of the opposing side, and recited that the Agreement was to remain "in full force and effect."

On February 1, 1989, defendant CCI moved for contempt sanctions against plaintiff. It contended that Gregory had drop shipped large amounts of diet product to current and former CCI distributors in violation of the November 29 injunction. In addition, CCI alleged two other violations. First, CCI argued that plaintiff had violated the order by telling distributors that the CCI Agreement had been nullified and that they could now get their diet product directly from him. And, second, CCI contended that plaintiff had violated the Agreement by selling the diet product at retail through his Florida hotel.

The district court held contempt hearings and after taking evidence the court issued a contempt order and made certain factual findings. The order found Gregory in contempt for violating the November 29 injunction, as well as for violating what it found to be previous, non-record, judicial orders issued at an earlier status conference. We will treat the previous orders as irrelevant to the disposition of this appeal.

The district court found, in effect, that the status quo provision of the November 29, 1988, injunction barred plaintiff from making large shipments to consumers. It then found that plaintiff had violated this provision. It also found that plaintiff had contacted suppliers, etc., and had engaged in sales through retail channels in violation of the injunction.

As a sanction for the contempt, the court ordered that plaintiff's future sales be limited to "quantities no greater than two cans per customer per month to individual end-consumers for the purpose of personal consumption." It also imposed as a sanction a requirement that, for the period between November 2, 1988,[2] and February 27, 1989, plaintiff pay defendant $10 for each can sold over and above two cans per customer per month sold through regular mail order channels to individual end-consumers for the purpose of personal consumption. Finally, the court enjoined plaintiff and those acting in concert with him from engaging in any commercial con-

---

2. Both parties appear to agree that this date should have been November 29, 1988.

tacts with former or present employees of CCI.

The plaintiff appealed the contempt order under both 28 U.S.C. §§ 1291 and 1292(a)(1) (No. 89–1260). He also appealed the order denying his motion for reconsideration (No. 89–1688).

We are met at the outset with the need to consider the nature of the contempt sanctions—civil or criminal—because of our resolution of this appeal.

We assume the correctness of the contempt finding, but not the sanctions, solely for the purpose of addressing the appealability issues presented.

### TWO–CAN SANCTION

■ We consider first whether the two-can sanction is appealable. Plaintiff contends that the sanction is a modification of the consent preliminary injunction of November 29, 1988, and thus is appealable under the "modifying" language of 28 U.S.C. § 1292(a)(1). The short answer is that no motion to modify was made under Fed.R.Civ.P. 65 (governing the practice for seeking a preliminary injunction). On the contrary, the sole matter tried by the district court was the alleged contempt of the November 29, 1988, consent injunction. Thus, the appeal of the two-can sanction is not appealable as a modification of the prior injunction. Indeed, if it is treated as a modification it would impugn the provision in the $10.00 per can sanction to the extent that the sanction gives a two-can credit per month in calculating the amount owed by plaintiff.

■ On the other hand, we conclude that the two-can limitation was a permissive sanction based on the civil contempt finding because its purpose was to compel compliance with the court's earlier order. So viewed, it is essentially coercive rather than punitive. While the usual rule is that an interlocutory civil contempt is not appealable, *United States Steel Corp. v. Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1273 (3d Cir.1979), the sanction in the

form of the two-can limitation, in our view, amounts to an independent preliminary injunction and thus is appealable at this stage, 28 U.S.C. § 1292(a)(1). We next determine whether the district court abused its discretion in imposing that injunction as a sanction.

■ Obviously our review is severely constrained lest, in reviewing the sanction, we violate the rule against appellate review of the civil contempt determination at this stage. Given the basis for the civil contempt finding and its objective, we cannot say that the imposition of the injunctive sanction constituted an abuse of discretion. We will therefore affirm the district court's order to that extent.[3]

### $10.00 PER CAN SANCTION

We next consider plaintiff's attempt to appeal the $10.00 per can sanction. A question immediately arises as to whether this sanction is presently appealable.

■ We first consider whether this contempt sanction may be justified as civil. Such a sanction must coerce or compensate. Since it is tied to past conduct it cannot be coercive. If the $10.00 per can sanction is compensatory, it must not exceed the actual damages caused the offended party, *Quinter v. Volkswagen of America*, 676 F.2d 969 (3d Cir.1982), and must be based on evidence of a complainant's actual loss. *National Drying Machinery Co. v. Ackoff*, 245 F.2d 192 (3d Cir.), *cert. denied*, 355 U.S. 832, 78 S.Ct. 47, 2 L.Ed.2d 44 (1957).

■ However, the record here contains absolutely no evidentiary basis for the $10.00 figure. Nor do the district court's findings of fact shed any light on that subject. Finally, the order of the district court contains no explanation for the use of the $10.00 amount. Thus, despite the fact that defendant requested that plaintiff be held in civil contempt, the record lacks an important evidentiary basis to support a

---

**3.** Plaintiff does not attack on appeal so much of the contempt order as enjoined plaintiff from

engaging in commercial contacts with former and present employees of CCI.

compensatory fine as a permissible sanction for civil contempt.[4]

■ If, on the other hand, the $10.00 provision is viewed as a criminal sanction, the proceedings can be said to suffer from a failure to comply with some of the procedural requirements found in Fed.R.Crim.P. 42(b). Additionally, the order provides that the payment is to be made to defendant rather than to the government. This suggests a civil contempt sanction.

As our court said in *National Drying Machinery Co. v. Ackoff*, 245 F.2d 192, 195 (3d Cir.), *cert. denied*, 355 U.S. 832, 78 S.Ct. 47, 2 L.Ed.2d 44 (1957):

> But there can be no "equity" in a compensatory award except as it provides a fair equivalent for some loss. If, on the other hand, the reference to changed "equities" means that the defendant deserved punishment for a willful wrong, the procedure must be that of criminal contempt rather than the employment of civil contempt as a punitive device.

We, of course, have jurisdiction, to consider our jurisdiction. However, in view of the ambiguous character of the $10.00 sanction, whether criminal or civil, we are not in a position to decide whether we should dismiss this portion of the appeal as one taken from an unappealable order holding plaintiff in civil contempt,[5] *United States Steel Corp. v. Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1273 (3d Cir. 1979), or remand it as a premature appeal from a criminal sanction that has never been entered in the criminal docket of the district court as required by Fed.R.App.P. 4(b).[6] *See also* Fed.R.Crim.P. 32(b)(1). *Compare United States v. Thoreen*, 653 F.2d 1332, 1338 (9th Cir.), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982).

■ Faced with our inability to decide on which basis to dispose of this appeal, we conclude that the preferable course is to vacate the $10.00 per can sanction and remand this case to the district court to permit the court to take all appropriate steps, including a reopening of the proceedings, to clarify the nature of this sanction. *See Clark v. Boynton*, 362 F.2d 992, 996–998 (5th Cir.1966); *Skinner v. White*, 505 F.2d 685, 688, 689 (5th Cir.1974). In the event of another appeal, this court will then be able to reach a definitive determination as to the nature of the $10.00 per can contempt sanction.

## CONCLUSION

The two-can limit as a sanction for the contempt finding will be affirmed. The provision in the contempt order leveling a $10.00 per can fine for a stipulated period will be vacated and that matter will be remanded for further consideration consistent with this opinion.

The order of the district court denying reconsideration will be affirmed because the motion was not served in timely fashion. *See Sonnenblick–Goldman Corp. v. Nowalk*, 420 F.2d 858, 861 (3d Cir.1970).

The parties shall bear their own costs in No. 89–1260. Plaintiff shall pay the costs in No. 89–1688.

BECKER, Circuit Judge, concurring in the judgment in part and dissenting in part.

This appeal turns almost entirely on properly characterizing two paragraphs in the district court's February 27, 1989 order. That document provides as follows:

---

4. The statement of counsel for defendant in making his argument to the court that "it's costing us in the neighborhood of ten dollars a can in terms of lost profits," is, mildly put, not evidence.

5. Because of the doubtful nature of the sanction, we need not address the possible applicability of *Kershner v. Mazurkiewicz*, 670 F.2d 440 (3d Cir.1982); *Latrobe Steel Co. v. United Steelworkers*, 545 F.2d 1336 (3d Cir.1976); *United*

States v. Spectro Foods Corp., 544 F.2d 1175 (3d Cir.1976).

6. In a criminal case the notice of appeal by a defendant shall be filed in the district court within 10 days after the entry of (i) the judgment or order appealed * * *. A judgment or order is entered within the meaning of this subdivision when it is entered in the criminal docket.

[I]t is hereby ORDERED that Gregory and Bourgeois are ADJUDGED in CONTEMPT of this Court, and are sanctioned as follows:

1. Gregory and Bourgeois and their agents ... are enjoined from selling or distributing the products covered by the Exclusive License Agreement between Gregory and CCI other than through regular mail-order channels in quantities no greater than two cans per customer per month to individual end-consumers for the purpose of personal consumption.
. . . .
4. ... [P]laintiff shall pay to the defendant $10.00 for each can sold over and above those sold through regular mail-order channels in quantities no greater than two cans per customer per month to individual end-consumers for the purpose of personal consumption.

I concur in the majority's judgment that paragraph 1 of the district court's 1989 order is an injunction, is therefore immediately appealable, and should be affirmed. I disagree, however, with the majority's simultaneous characterization of the injunction as a civil contempt sanction, and with its attendant legal consequences. Moreover, I believe that paragraph 4 of the order is unquestionably a *civil* contempt sanction. Because this case has not yet reached final judgment and because Gregory has not appealed the district court's November 29, 1988 order, the violation of which forms the basis of the contempt sanction, I conclude that we lack jurisdiction to entertain Gregory's challenge to paragraph 4 of the order.

## I.

The first question presented is whether to characterize paragraph 1 of the order as an injunction or a contempt sanction. This issue is critical for jurisdictional purposes, because orders granting injunctions are immediately appealable, *see* 28 U.S.C. § 1292(a)(1), while orders imposing civil contempt sanctions ordinarily are not ap-

pealable by a party until final judgment, *see Doyle v. London Guarantee & Accident Co.*, 204 U.S. 599, 27 S.Ct. 313, 51 L.Ed. 641 (1907). *See generally* André, "The Final Judgment Rule and Party Appeals of Civil Contempt Orders: Time for a Change," 55 N.Y.U.L.Rev. 1041 (1980) [hereinafter "Final Judgment Rule"]. The majority appears to create an odd hybrid—a provision that is *both* a civil contempt sanction and an injunction—with unusual jurisdictional consequences: the provision is sufficiently injunction-like to be immediately appealable under section 1292(a)(1), but sufficiently sanction-like to require a "severely constrained" standard of review, lest the court "violate the rule against appellate review of the civil contempt determination at this stage." *Ante* at 34. I fear that the majority's analysis can only confuse the well-settled and distinct jurisprudences that have developed around injunctions and contempt sanctions respectively.

Injunctions, by definition, prohibit primary conduct. Contempt sanctions, by contrast, enforce injunctions, or other valid court orders, in one of three ways. Criminal contempt sanctions punish past violations of injunctions.[1] Civil contempt sanctions take one of two forms, depending on whether their purpose is to compensate for past violations or to coerce future compliance:

Remedial or compensatory actions are essentially backward looking, seeking to compensate the complainant through the payment of money damages caused by past acts of disobedience. Coercive sanctions, in contrast, look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order or by assuring that a potentially contumacious party adheres to an injunction by setting forth in advance the penalties the court will impose if the party deviates from the path of obedience.

*Latrobe Steel Co. v. United Steelworkers*, 545 F.2d 1336, 1344 (3d Cir.1976) (footnote

---

**1.** *See* 18 U.S.C. § 401(3) (1982). Additionally, criminal contempt sanctions punish misbehavior in court that "obstruct[s] the administration

of justice," *see id.* § 401(1), and misbehavior by court officers "in their official transactions," *see id.* § 401(2).

omitted). In the case of coercive sanctions, the penalty "set[ ] forth in advance" is customarily either a jail sentence of indefinite duration, which the contemnor may avoid by agreeing to comply with the underlying order,[2] or a fine conditioned on future violations of the underlying order.[3] Roughly speaking, then, injunctions take the form "Don't do X," and coercive civil sanctions "If you continue to do X, you will suffer Y," where Y is usually imprisonment or a monetary fine.

Although courts rarely conceive of orders so abstractly, they clearly have perceived some fundamental difference between injunctions and civil contempt sanctions, because the doctrines and case lines that have developed around each are quite different. For instance, an injunction cannot issue absent some showing of otherwise irreparable harm, regardless of whether the legal violation complained of

has already occurred.[4] By contrast, a contempt sanction cannot issue until the legal violation complained of has occurred, regardless of whether or not the injury it produces is irreparable: if the underlying order has yet to be violated, then what purports to be a contempt sanction is more correctly treated as a declaratory judgment.[5] Furthermore, a district court enjoys broad discretion to fashion an appropriate injunctive remedy,[6] but a coercive civil sanction must employ "[t]he least possible power adequate" to achieve future compliance.[7] We have never imposed a heightened standard of proof for claims seeking injunctions,[8] and have reviewed factfinding in this context with customary deference.[9] By contrast, civil contempt determinations must be supported by clear and convincing evidence,[10] and the tone of our opinions sometimes suggests a willing-

---

**2.** See, e.g., Shillitani v. United States, 384 U.S. 364, 370–71, 86 S.Ct. 1531, 1535–36, 16 L.Ed.2d 622 (1966); McCrone v. United States, 307 U.S. 61, 63–64, 59 S.Ct. 685, 686–87, 83 L.Ed. 1108 (1939). Although imprisonment is usually thought to be punitive, and therefore criminal, coercive sanctions of this type are deemed civil because the contemnor " 'carries the keys of his prison in his own pocket.' " Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911) (citation omitted).

**3.** Such fines may accrue immediately and continuously, until the injunction is obeyed, see, e.g., United States v. City of Yonkers, 856 F.2d 444, 450–52 (2d Cir.1988), rev'd in part sub nom. Spallone v. United States, —— U.S. ——, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990), or may accrue all at once at some future time, if the contempt has not been purged before that time, see, e.g., United States v. United Mine Workers, 330 U.S. 258, 304–05, 67 S.Ct. 677, 701–02, 91 L.Ed. 884 (1947).

**4.** See, e.g., City of Los Angeles v. Lyons, 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983) ("equitable remedy is unavailable absent a showing of irreparable injury"); Doran v. Salem Inn, Inc., 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975) ("The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury....").

**5.** See Thermice Corp. v. Vistron Corp., 832 F.2d 248, 251–52 (3d Cir.1987); Interdynamics, Inc. v. Wolf, 698 F.2d 157, 164–65 (3d Cir.1982).

**6.** See, e.g., Swann v. Charlotte–Mecklenburg Bd. of Educ., 402 U.S. 1, 15, 91 S.Ct. 1267, 1275, 28 L.Ed.2d 554 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

**7.** E.g., Spallone v. United States, —— U.S. ——, 110 S.Ct. 625, 635, 107 L.Ed.2d 644 (1990); Shillitani v. United States, 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966); Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 231, 5 L.Ed. 242 (1821).

**8.** For examples of courts expressly to have endorsed a preponderance standard for factfinding incident to the award of an equitable remedy, see, for example, Crews v. Radio 1330, Inc., 435 F.Supp. 1002, 1005 (N.D.Ohio 1977) (temporary restraining order); Corenco Corp. v. Schiavone & Sons, Inc., 362 F.Supp. 939, 944 (S.D.N.Y.) (permanent injunction), modified on other grounds, 488 F.2d 207 (2d Cir.1973); and Smith v. Newport Nat'l Bank, 326 F.Supp. 874, 877 (D.R.I.1971) (preliminary injunction).

**9.** See, e.g., Premier Dental Prods. Co. v. Darby Dental Supply Co., 794 F.2d 850, 852 (3d Cir.) ("Unless ... 'a serious and important mistake has been made in the consideration of the proof, the judgment of the trial court [in granting a preliminary injunction] must be taken as presumptively correct.' " (citation omitted)), cert. denied, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986).

**10.** See Fox v. Capital Co., 96 F.2d 684, 686 (3d Cir.1938).

ness to review district court findings in this context unusually carefully, if not *de novo*.[11] Finally, and most importantly for present purposes, injunctions are appealable when issued,[12] while civil contempt sanctions ordinarily are not appealable until final judgment.[13]

Of course in reality, injunctions and civil contempt sanctions lack the degree of pristineness that this brief sketch suggests, both in terms of distinguishing one from the other and in terms of delineating the various rules applicable to each. Nonetheless, the two classes of orders are sufficiently different conceptually and doctrinally that it seems to me preferable, given an order arguably an injunction or arguably a civil contempt sanction, to attempt to characterize it as one or the other, but not both. That is not to foreclose the possibility of *ever* resorting to the majority's hybrid jurisprudence, just to suggest that such a strategy would be appropriate only as a last resort.

This is not a case of last resort. Paragraph 1 of the district court's order simply prohibits future conduct. It is plainly not remedial. The majority, however, characterizes the provision as "coercive" because "its purpose was to compel compliance with the court's earlier order." Ante at 34. But the provision simply does not coerce in the

way that coercive civil contempt sanctions do—by "setting forth in advance the penalties" of disobeying an underlying injunction. *Latrobe Steel Co.*, 545 F.2d at 1344. With respect to future disobedience, the provision sets out no penalties whatsoever. Instead, it establishes a legal obligation similar to, but more well-defined than, the obligation created in the 1988 order. In a sense, the provision "coerces," for it puts Gregory on notice that he faces another contempt proceeding should he violate the two-can limit imposed by the provision. That is exactly the mechanism by which any injunction coerces, however. For the reasons given, I would conclude that paragraph 1 of the 1989 order is an injunction, but not a civil contempt sanction.[14]

Like the majority, therefore, I would review that injunction. I would employ our customary standard of review for preliminary injunctions, however, not the "severely constrained" standard that now evidently governs review of injunction-sanctions. "In reviewing the grant of a preliminary *injunction*, we are limited to determining whether there has been 'an abuse of discretion, an error of law, or a clear mistake on the facts.'" *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987) (citation omitted). Having reviewed the record and concluded that none of these has oc-

---

11. *See, e.g., Quinter v. Volkswagen of America,* 676 F.2d 969, 974 (3d Cir.1982) ("The district court went on to hold that [the evidence was sufficient]. We disagree."); *Schauffler v. Local 1291, Int'l Longshoremen's Assoc.,* 292 F.2d 182, 190 (3d Cir.1961) ("It is our opinion that the Board's evidence [found sufficient by the district court] was not 'clear and convincing.'"); *Fox,* 96 F.2d at 687 ("We think [the contempt] was not established by that clear and convincing proof....").

12. *See* 28 U.S.C. § 1292(a)(1).

13. *See Doyle v. London Guar. & Accident Co.,* 204 U.S. 599, 27 S.Ct. 313, 51 L.Ed. 641 (1907); *infra* 41–42 (discussing possible exceptions to *Doyle* ).

14. Although the majority does not suggest otherwise, it is important to note that the labels attached by the district court to its order are not determinative. In characterizing district court orders, especially for purposes of determining our appellate jurisdiction, we have always

"look[ed] to the substance of the order rather than the form." *Cromaglass Corp. v. Ferm,* 500 F.2d 601, 604 (3d Cir.1974) (en banc). For example, we have characterized what purported to be an unappealable temporary restraining order as an appealable preliminary injunction when, as a practical matter, it operated as such. *See In re Arthur Treacher's Franchisee Litig.,* 689 F.2d 1150, 1153–54 (3d Cir.1982). Also, we have characterized what purported to be an unappealable contempt sanction as an appealable declaratory judgment when the violation of the underlying injunction appeared imminent, but had not yet occurred. *See Thermice Corp. v. Vistron Corp.,* 832 F.2d 248, 251–52 (3d Cir. 1987). In any event, once one recognizes the implausibility of the majority's analysis, the district court's labels, which denominate the entire order as a sanction but paragraph 1 of the order as an injunction, become quite unhelpful in attempting to characterize paragraph 1 as either one or the other.

curred,[15] I concur in the majority's judgment affirming the injunction in paragraph 1 of the district court's order.

## II.

I now address Gregory's appeal of the sanction imposed in paragraph 4 of the district court's order.

### A.

As noted above, a party cannot ordinarily appeal a civil contempt sanction before final judgment. Criminal contempt sanctions, by contrast, are immediately appealable. *See Union Tool Co. v. Wilson*, 259 U.S. 107, 111, 42 S.Ct. 427, 428–29, 66 L.Ed. 848 (1922). The majority expresses uncertainty as to whether the contempt sanction in paragraph 4 was civil or criminal, and therefore remands for further clarification. Because I believe there is not even a colorable claim that the sanction was criminal, I would treat it as civil and proceed accordingly.

In *Hicks v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), the Supreme Court clarified the rules for determining whether a contempt sanction is remedial in nature (and therefore civil) or punitive in nature (and therefore criminal). The Court looked exclusively to certain objective features of the relief sought and imposed. "If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Id.* 108 S.Ct. at 1429–30.[16]

Although these rules were fairly well settled before *Hicks*,[17] some language from earlier cases had suggested that a district court's subjective intent in imposing the sanction was relevant to determining its character. *See, e.g., Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966) ("The test may be stated as: what does the court primarily seek to accomplish by imposing sentence?"). In *Hicks*, however, the Court expressly rejected this approach, laying down the "few straight-forward rules"[18] quoted above and "eschew[ing] any alternative formulation that would make the classification of the relief imposed in a State's proceedings turn simply on what their underlying purposes are perceived to be."[19]

In its prior cases, the Court has mentioned a few other formal indicia helpful in determining whether a contempt proceeding is civil or criminal. Most prominent

---

**15.** Gregory's contract with the plaintiffs gave plaintiffs an exclusive license to sell Gregory's product, although Gregory retained the right to continue making certain mail order sales to individual consumers. For health reasons, individual consumers of Gregory's product would not ordinarily consume more than two to four cans per month; hence the two-can per month limit. *See* App. at 431–32. Gregory sued to terminate the contract, and the preliminary injunction is clearly designed to make Gregory continue to honor his contractual obligations pending an outcome on the merits. The district court did not abuse its discretion in this regard.

**16.** Similarly, "[i]f the relief provided is a sentence of imprisonment, it is remedial if 'the defendant stands committed unless and until he performs the affirmative act required by the court's order,' and is punitive if 'the sentence is limited to imprisonment for a definite period.'" 108 S.Ct. at 1429 (citation omitted).

**17.** See, for example, André, "Final Judgment Rule," 55 N.Y.U.L.Rev. at 1042–43, which summarized some of the rules as follows: "A criminal contempt sanction imposes a fixed prison sentence or a fixed fine payable to the court in order to vindicate the authority of the court. All other contempt sanctions are civil. Thus, a sanction that awards a private litigant a sum of money for damages suffered as a result of the violation of a court order is a civil contempt sanction."

**18.** 108 S.Ct. at 1429.

**19.** *Id.* at 1431. The Court perceived the need for bright-line rules especially acutely in *Hicks*, which involved an appeal from a state court contempt proceeding challenged on federal constitutional grounds. The Court was merely expounding federal law, however, which governs the classification of state contempt proceedings as civil or criminal insofar as it affects the availability of federal rights. *See id.* at 1429. Nothing in *Hicks*, or anywhere else, suggests that the rules are any different for classifying federal court contempt proceedings.

among these is how the proceedings are initiated and prosecuted. "Proceedings for civil contempt are between the original parties, and are instituted and tried as a part of the main cause. But, on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause." *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 444–45, 31 S.Ct. 492, 499–500, 55 L.Ed. 797 (1911); *see also Latrobe Steel Co.,* 545 F.2d at 1343–44. *Hicks* failed to mention this distinction among its "few straight-forward rules," but also failed to jettison it. Presumably, therefore, it remains relevant.

Under these principles, the sanction imposed upon Gregory is unquestionably civil, because the contempt proceeding was instituted and prosecuted by the opposing parties, who asked for and received a monetary sanction payable *to them,* not the court. Despite all this, Gregory invites us to consider whether the district court was more concerned with compensating the complainants or with punishing Gregory when it ordered the contempt. *See* Appellant's Br. at 40–41. As explained, however, *Hicks* makes this inquiry clearly irrelevant.

The majority correctly notes that compensatory fines awarded for civil contempt cannot exceed the complainant's actual losses. The import of this proposition, however, is that civil contempt awards challenged and *properly before this court* must be vacated if they appear to us excessive, or unsupported by clear and convincing evidence. Thus in *Quinter v. Volks-*

*wagen of America,* 676 F.2d 969 (3d Cir. 1982), after concluding that the fine imposed exceeded the complainant's actual losses, we remanded to the district court for a recalculation of damages. *See id.* at 975. And in *National Drying Machinery Co. v. Ackoff,* 245 F.2d 192 (3d Cir.), *cert. denied,* 355 U.S. 832, 78 S.Ct. 47, 2 L.Ed.2d 44 (1957), after concluding that the sanction imposed exceeded the complainant's actual losses, we ordered the elimination of the offending component of the fine. *See id.* at 195. Neither case suggested that the award of an excessive amount of damages, by itself, might somehow change the character of the proceeding under consideration from civil to criminal. *Clark v. Boynton* [20] and *Skinner v. White* [21] are not to the contrary. *Clark* and *Skinner* both remanded for further clarification as to whether a contempt proceeding was civil or criminal. Each case, however, involved sources of confusion that are either legally irrelevant under current law or not present in the instant appeal.[22]

To my knowledge, no case has ever suggested—and, after *Hicks,* no case could suggest—that a contempt proceeding unquestionably civil from its inception becomes arguably criminal if the amount of compensation awarded to the complainant appears, in the eyes of the reviewing court, to be too high, or unsupported by clear and convincing evidence of the complainant's actual damages. I therefore dissent from the majority's decision to remand for further clarification. I would treat the con-

---

20. 362 F.2d 992 (5th Cir.1966).

21. 505 F.2d 685 (5th Cir.1974).

22. *Clark* was decided just after *Shillitani,* so the court of appeals understandably burdened itself with the difficult task of trying to determine "the undisclosed characterization of th[e] proceeding as a criminal or civil contempt in the mind of [the district court]," 362 F.2d at 995—exactly the kind of "general assessment of the manifold and complex purposes that lie behind a court's action" that *Hicks* later made clear is inappropriate. *See* 108 S.Ct. at 1432. Moreover, the order entered by the district court in *Clark* failed to specify whether the fine it had imposed was payable to the court or to the plaintiffs, *see* 362 F.2d at 998, a critically important (if not determinative) piece of infor-

mation for classifying a monetary contempt sanction properly. *Skinner,* like *Clark,* thought it relevant to try to discern the subjective intent of the district court imposing the sanctions. *See* 505 F.2d at 688–69. Moreover, the "sanctions" in *Skinner* in fact consisted of several injunctions and declaratory judgments having little to do with the terms of the underlying decree, and which therefore "would not terminate upon appellants' compliance with the terms of the decree," *id.* at 689, the hallmark of a coercive civil sanction. In sum, the *Clark* and *Skinner* courts had fair reasons to be uncertain about the nature of the contempt sanctions before them, but reasons that have no bearing on classifying the sanction before us at this time.

tempt sanction as civil, and complete the jurisdictional analysis on that assumption.

### B.

Gregory advances two arguments why, even conceding that the sanction was civil in nature, it is immediately appealable nonetheless.

First, he contends that the entire order must be appealable under 28 U.S.C. § 1292(a)(1) because paragraph 1 of the order is so appealable. This principle would expand or contract the scope of interlocutory appellate jurisdiction depending on how many items the district court chose to combine into a single order. Despite the problematic nature of this result, some of our prior cases did endorse this view. For example, in *D'Iorio v. County of Delaware*, 592 F.2d 681 (3d Cir.1978), we stated that "[w]hen appellate jurisdiction is established [under section 1292(a)(1)], the entire order, and not simply the propriety of the injunctive relief, is before the court for reivew." *See id.* at 685 n. 4. *See also Kohn v. American Metal Climax, Inc.*, 458 F.2d 255, 262 (3d Cir.), *cert. denied*, 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972). Unfortunately for Gregory, however, *Kershner v. Mazurkiewicz*, 670 F.2d 440 (3d Cir.1982) (in banc), has since overruled the jurisdictional holdings of *D'Iorio* and *Kohn*. *See id.* at 448–49. In *Kershner*, we refused to review the denial of a motion for class certification before final judgment, even though that denial was executed in the same order as the denial of a preliminary injunction, which we reviewed. We noted our concern that the rule "suggested in *D'Iorio* and *Kohn* could effectively undermine the final decision rule." *Id.* at 449. In light of *Kershner*, Gregory's first argument is plainly without merit.

Second, Gregory argues that the civil contempt sanction is appealable under the doctrine of *United States v. Spectro Foods Corp.*, 544 F.2d 1175 (3d Cir.1976), which held that "one who is a party may appeal from a civil contempt order *in connection with* some other appealable order." *Id.* at 1179 (emphasis added). *Spectro* thus created a kind of pendent appellate jurisdiction: a contempt order that would otherwise be not yet appealable (because of the *Doyle* rule) is appealable if properly connected with an order that is itself immediately appealable. The scope of *Spectro*'s exception to *Doyle* thus turns on what counts as a valid "connection" between an otherwise unappealable contempt order and some other immediately appealable order to which a contemnor seeks to append it. Unfortunately, our jurisprudence does not provide direct guidance on this issue.

However, each of our cases to apply the doctrine has involved the same basic fact pattern—an appeal of a civil contempt order "in connection with" an appeal of the injunction on which the contempt sanction was predicated.[23] In such cases, the principle that a civil contempt sanction cannot survive the invalidation of the underlying injunction[24] justifies the exercise of interlocutory appellate jurisdiction over the pendent contempt order. As Judge Garth has explained,

> [t]he logic [of *Spectro*] appears to rest on the principle that, because civil contempt is remedial, not punitive, in nature, "the reversal of the [underlying injunction] does more than destroy the future sanction of the decree. It adjudges that it never should have passed; that the right which it affected to create was no right at all. To let the liability stand for past contumacy would be to give the plaintiff a remedy not for a right but for a wrong, which the law should not do."

---

**23.** *See American Greetings Corp. v. Dan–Dee Imports, Inc.*, 807 F.2d 1136, 1148–49 & n. 7 (3d Cir.1986); *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1150, 1155 (3d Cir.1982); *International Bhd. of Teamsters v. Western Pa. Motor Carriers Assoc.*, 660 F.2d 76, 80–81 (3d Cir.1981); *Latrobe Steel Co.*, 545 F.2d at 1339–40; *Spectro*, 544 F.2d at 1178–79.

**24.** *See Latrobe Steel Co.*, 545 F.2d at 1345–47 (coercive sanction); *United Mine Workers*, 330 U.S. at 294–95, 67 S.Ct. at 696–97 (remedial sanction). Criminal contempt sanctions, by contrast, do survive the reversal of an underlying injunction that was not "transparently invalid" when issued. *See Walker v. City of Birmingham*, 388 U.S. 307, 315, 87 S.Ct. 1824, 1829, 18 L.Ed.2d 1210 (1967).

*Halderman v. Pennhurst State School & Hospital*, 673 F.2d 628, 641 (3d Cir.1982) (en banc) (Garth, J., concurring in part and dissenting in part) (citation omitted), *cert. denied*, 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984).[25] In other words, the *Spectro* doctrine ensures that a contempt sanction will not stand, even temporarily, once its legal predicate has, through an orderly process of appellate review, been found lacking.

Gregory fails to offer us a coherent account of why we should apply the *Spectro* doctrine in this case. Judge Garth's rationale is inapposite, because the 1989 injunction that Gregory has appealed cannot form the legal predicate of a simultaneously issued contempt sanction; clearly, the contempt sanction was predicated upon violations of the 1988 injunction, which Gregory has not appealed. The 1988 injunction by itself might well be too vague to support a civil contempt finding. Still, if Gregory were concerned on this score, he should have either appealed the 1988 injunction directly or petitioned the district court for a clarification. Having done neither, he must wait until final judgment to challenge the contempt order.

Nor does Gregory argue that we must necessarily evaluate the contempt sanction in order to review the 1989 injunction properly—the rationale for pendent appellate jurisdiction endorsed in *Kershner*.[26] He does argue that we can review the contempt sanction because it was executed in the same order as a reviewable injunction, but that position is without merit.[27] By process of elimination, Gregory's argument appears to be that we can review the contempt sanction, for our convenience or the litigants', in connection with our review of the injunction because each presents related or overlapping legal and factual issues. He invites us, in other words, to expand *Spectro* into a kind of appellate-court analog of the flexible, pragmatic doctrine of pendent original jurisdiction expounded in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

This broad reading of *Spectro* cannot be reconciled with our *in banc* decision in *Kershner*.[28] *Kershner* endorsed the concept of pendent appellate jurisdiction, but warily. *Kershner* is saturated with rhetoric about the circuit courts' duty to obey 28 U.S.C. § 1291, about the salutary policies underlying the final judgment rule, and about how reviewing claims pendent to an interlocutory appeal under section 1292(a)(1) is strongly disfavored as a general matter, " 'lest a floodgate be opened,' " 670 F.2d at 447 (citation omitted). In light of this admonition, I conclude that the *Spectro* doctrine must be limited to cases in which the appellant appeals a civil contempt sanction "in connection with" an appeal of the underlying injunction. Because Gregory did not appeal the injunction underlying his civil contempt sanction—the 1988 injunction ordering him to maintain the status quo—*Spectro* is inapplicable. To the extent that Gregory seeks interlocutory review of paragraph 4 of the district court's order, therefore, I would dismiss for want of appellate jurisdiction.

---

**25.** Judge Garth's account, although only a concurrence, was cited approvingly by the first panel after *Pennhurst* to apply *Spectro*. *See Arthur Treacher's*, 689 F.2d at 1155.

**26.** *Kershner* endorsed pendent appellate jurisdiction to the extent that an appealable order "*cannot be resolved* without reference to the otherwise nonappealable [order]—either because the latter issue directly controls disposition of the former, or because the issues are, in some other way, inextricably bound." 670 F.2d at 449 (emphasis in original). The civil contempt sanction plainly does not satisfy this requirement, for the propriety of the injunction in paragraph 1 can be evaluated without reference to the validity of the civil contempt sanction in paragraph 4.

**27.** *See supra* at 41.

**28.** *Kershner* did expressly reaffirm *Spectro*, but with no hints as to its proper scope. *See* 670 F.2d at 449 n. 12.