949 F.2d 235
 The OMAHA INDEMNITY CO. and The Mutual of Omaha Insurance
Co., Appellees,
v.
James R. WINING, Appellant.
Ram Syndicate, Inc.; Program Administrative Service, Inc.;
Patrician Realty, Inc.; William Alexander
Reinsurance Management Inc.; Laramie
Insurance Company, a Wyoming
Insurance Company.
 No. 90-2256.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 11, 1991.
Decided Nov. 8, 1991.
 
 Marty Eckley Keach, Las Vegas, Nev., argued (Byron Neal Fox, Kansas City, Mo., on brief), for appellant.
 Francis M. Gregory, Jr., Washington, D.C., argued (John W. Bonds, Jr., Atlanta, Ga., Sheila J. Carpenter, Washington, D.C., John C. Dods and Joe Rebein, Kansas City, Mo., on brief), for appellees.
 Before FAGG, and LOKEN, Circuit Judges, and SNEED,* Senior Circuit Judge.
 LOKEN, Circuit Judge.
 
 
 1
 In the midst of protracted litigation by an insurance company to recover insurance losses from allegedly negligent and faithless agents, defendant James R. Wining appeals interlocutory orders enjoining him from transferring business or personal assets without court approval, and appointing a receiver for the purpose of reversing a transaction that violated a prior preliminary injunction. We conclude that the orders in question were an appropriate exercise of the district court's[1] equitable discretion. Accordingly, we affirm.
 
 I.
 
 2
 Wining was president of Royal American Managers (RAM), an insurance agency. In 1983, appellee Omaha Indemnity Company and RAM entered into a managing general agency agreement giving RAM limited authority to bind Omaha Indemnity to certain insurance and reinsurance risks. On April 3, 1986, Omaha Indemnity commenced this action against Wining, RAM and others, alleging that defendants had caused RAM and its predecessor to write insurance in Omaha Indemnity's name without necessary disclosure and approval and had failed to adequately underwrite this business, causing Omaha Indemnity huge underwriting losses.
 
 
 3
 After filing its complaint, Omaha Indemnity moved for a preliminary injunction to enjoin RAM from acting in Omaha Indemnity's name and for other relief. Rather than contest this motion, defendants entered into a stipulation in which they agreed to the terms of the proposed injunction. Among other restraints, the stipulation prohibited RAM and Wining:
 
 
 4
 from transferring either directly, or indirectly, to or through any corporation owned or controlled by such defendants, any funds, property or assets derived from or related to the management by RAM of the Omaha Indemnity Business other than as ... directed by an order of th[e] Court.
 
 
 5
 The stipulation provided that it would have "the same force and effect as if ... entered by the Court." It was presented to the district court, which signed an "Approved" notation at the foot of the document on April 9, 1986.
 
 
 6
 In December 1986, the parties agreed to arbitrate Omaha Indemnity's claims against RAM. At the request of Wining and the other defendants, the district court ordered the action stayed as to all parties pending the outcome of arbitration.[2] However, the stay order provided that "all parties shall comply with the April 9, 1986, stipulation."
 
 
 7
 On September 3, 1987, Wining directed defendant Fielding Reinsurance, Ltd. (Fielding), to rescind its contractual relationship with Omaha Indemnity and then to transfer approximately $31 million in assets to Laramie Insurance Company (Laramie), a new insurer formed to do business in Wyoming. Fielding is a British West Indies company owned by defendant Kensu Holdings, Inc., which also owns RAM. According to Omaha Indemnity, prior to this lawsuit RAM had secretly "retroceded" a portion of its Omaha Indemnity business to Fielding, and the policies so ceded were facing enormous underwriting losses. Thus, from Omaha Indemnity's perspective, the monies transferred to Laramie "related to the management by RAM of the Omaha Indemnity Business," in the words of the April 1986 stipulation, and the transfer had made this $31 million of Fielding assets unavailable to meet Omaha Indemnity losses. However, defendants saw things differently--acting pursuant to a board of directors determination that the transfer would not violate the April 1986 stipulation,[3] the Fielding/Laramie transfer was completed without notice to Omaha Indemnity or approval by the court.
 
 
 8
 In November 1988, Omaha Indemnity moved to hold defendants in contempt or to grant further injunctive relief. Omaha Indemnity argued that the Fielding/Laramie transfer violated the April 1986 stipulated injunction and the December 1986 stay order because, under basic principles of insurance, all of Fielding's assets were subject to its reinsurance liabilities and therefore "related to" RAM's management of Omaha Indemnity business. Defendants responded that the transfer was not a breach because Fielding had unilaterally rescinded its reinsurance obligations to Omaha Indemnity, and therefore had no funds or assets "derived from or relating to" RAM's management of Omaha Indemnity.
 
 
 9
 The district court first held a hearing on July 6, 1989, to determine whether there were material fact issues that would require an evidentiary hearing. On February 9, 1990, following extensive submissions by the parties, the court entered an order holding that the Fielding/Laramie transfer violated the preliminary injunction and ordering defendants to "take whatever action is necessary to restore these assets and liabilities to Fielding."
 
 
 10
 Five days later, on February 14, 1990, a Wyoming state court held a hearing to determine whether to appoint a receiver and liquidate the now insolvent Laramie.[4] Defendant William A. Schonacher, Jr., Wining's partner and a majority shareholder of Laramie, attended that hearing by telephone and consented to the appointment of a receiver and the liquidation of Laramie without advising the Wyoming court of the district court's order to reverse the Fielding/Laramie transfer. A receiver was appointed and thereafter took the position that the district court's February 9 order was a "nullity."
 
 
 11
 Faced with this total frustration of its prior orders, the district court ordered Wining, Schonacher, RAM and other defendants to show cause why they should not be held in contempt. Following extensive briefing and an evidentiary hearing on July 16, 1990, the district court entered the three orders that Wining now appeals. The first order held Wining, Schonacher, RAM, Kensu Holdings and Fielding in contempt for violating the April and December 1986 preliminary injunction orders. The second order restrained Wining, Schonacher and those acting in concert with them from transferring any personal or business assets, except for reasonable living expenses, without court approval. The third order appointed a receiver for Fielding who was instructed "to undertake all actions necessary or appropriate to cause the Fielding/Laramie transfer to be reversed," and awarded Omaha Indemnity its attorneys' fees in prosecuting the contempt motion and in seeking to reverse the Fielding/Laramie transfer.
 
 
 12
 Although all of the contemnors appealed, all but Wining settled their appeals prior to oral argument. The award of attorneys' fees to Omaha Indemnity has been fully settled. Therefore, the only issues remaining for decision are whether the district court erred in restraining Wining from transferring personal and business assets other than for reasonable living expenses, and in appointing the Fielding receiver.
 
 II.
 
 13
 Wining argues on appeal that no valid preliminary injunction existed that he could be held to have violated and that, if there was such an order, he did not violate it. In other words, Wining primarily attacks the district court's decision to hold him in contempt.
 
 
 14
 These arguments ignore our limited jurisdiction to review interlocutory orders. The district court conducted a civil contempt proceeding in which it considered whether to impose remedial sanctions for the benefit of Omaha Indemnity. Hicks v. Feiock, 485 U.S. 624, 631, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988). Interlocutory civil contempt orders are not appealable by a party. See Motorola, Inc. v. Computer Displays Int'l, Inc., 739 F.2d 1149, 1154-55 (7th Cir.1984). Thus, we must put aside as beyond our present jurisdiction the contempt issues that Wining seeks to present, as we did in SEC v. Naftalin, 460 F.2d 471, 475 (8th Cir.1972).
 
 
 15
 However, it is generally conceded that an interlocutory civil contempt order is appealable under 28 U.S.C. § 1292(a)(1) if it "amounts to an independent preliminary injunction," Gregory v. Depte, 896 F.2d 31, 34 (3d Cir.1990), a question that turns upon whether the order "alters the legal relationship between the various parties." Combs v. Ryan's Coal Co., 785 F.2d 970, 977 (11th Cir.), cert. denied, 479 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 120 (1986); Motorola, 739 F.2d at 1155. Here, the "sanctions" of which Wining complains--restraining his personal and business expenditures and appointing a receiver--are injunctive in nature and alter the legal relationships established by the initial, stipulated preliminary injunction. Moreover, these are remedies that may have " 'serious, perhaps irreparable, consequences' ... that ... can be 'effectually challenged' only by immediate appeal." Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 997, 67 L.Ed.2d 59 (1981). Thus, even though the district court's contempt determination is not separately appealable at this interlocutory stage of the litigation, we may review its grant of this additional preliminary injunctive relief, as we did in Movie Systems, Inc. v. Mad Minneapolis Audio Distrib., 717 F.2d 427 (8th Cir.1983).
 
 
 16
 By so clarifying our appellate jurisdiction, however, we have significantly changed the nature of the inquiry. We are, in substance, reviewing the modification of a preliminary injunction.[5] We review the modification of a preliminary injunction on an abuse of discretion standard, without regard to the heightened standard of proof and the remedial limitations that have been placed on the exercise of civil contempt powers. See Gregory v. Depte, 896 F.2d at 37-38 (Becker, J., concurring in part and dissenting in part).
 
 
 17
 When considering whether to modify a preliminary injunction, "a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law." Movie Systems, Inc., 717 F.2d at 430; cf. McDonald v. Armontrout, 908 F.2d 388, 390 (8th Cir.1990) (consent decree context). In this case, after extensive proceedings on Omaha Indemnity's motion for sanctions, the district court concluded that the Fielding/Laramie transfer violated the stipulated preliminary injunction, that defendants knew the transfer might arguably be in violation but made the "business judgment" not to seek court approval, and that defendants had taken "a series of actions that show an intent to violate those orders, to get around those orders, to cleverly evade those orders." Moreover, five days after the district court had ordered defendants to reverse the Fielding/Laramie transfer, defendant Schonacher helped place Laramie, the transferee, into receivership without disclosing the district court's reversal order to the Wyoming state court, thus making the reversal much more difficult to accomplish.
 
 
 18
 Under these circumstances, we conclude that the district court orders strengthening the earlier injunction were justified. The order enjoining Wining from transferring business or personal assets was warranted because of the complex web of entities under Wining's control, his prior efforts to evade the initial preliminary injunction, and his purported ignorance of the intended scope of the earlier injunction. See Flavor Corp. of America v. Kemin Ind., Inc., 503 F.2d 729, 732 (8th Cir.1974). As we held in Movie Systems, Inc., the district court may strengthen a preliminary injunction to stop "elaborate winking" at its prior decree, as well as outright disobediance. 717 F.2d at 431. Thus, we agree with the district court's stated reasons for granting this relief:
 
 
 19
 Now, it is absolutely imperative in my view that the injunction have this breadth. And that it cover future acquired assets, that it cover everything. Because the pattern of behavior up until now has deprived me of any confidence in relying on the usual good faith that would be assumed.
 
 
 20
 ... In 1986 the message to the defendants was, "Maintain the status quo, we rely on your good faith to do so." Today the message is, "We're going to maintain the status quo and do everything we can to see that it happens and we're going to rely on the good faith of the defendants as little as possible."
 
 
 21
 Likewise, the district court's decision to appoint a receiver was clearly warranted. By helping place Laramie into receivership, defendants had rendered themselves unable, as well as unwilling, to obey the court's prior order to reverse the Fielding/Laramie transfer. When more common equitable remedies prove inadequate, "a court of equity is justified, especially in aid of an outstanding injunction, in turning to less common ones, such as a receivership, to get the job done." Morgan v. McDonough, 540 F.2d 527, 533 (1st Cir.1976), cert. denied, 429 U.S. 1042, 97 S.Ct. 743, 50 L.Ed.2d 755 (1977). See Consolidated Rail Corp. v. Fore River Ry., 861 F.2d 322, 326-27 (1st Cir.1988); United States v. Vertac Chemical Corp., 671 F.Supp. 595, 623 (E.D.Ark.1987), remanded on other grounds, 855 F.2d 856 (8th Cir.1988); United States v. City of Detroit, 476 F.Supp. 512, 520 (E.D.Mich.1979).
 
 
 22
 To summarize, we conclude that the district court did not abuse its discretion in granting the relief in question. Regardless whether the previous 1986 orders were injunctive in nature,[6] and regardless whether Wining had technically violated those earlier orders, by July 1990 the equities were overwhelmingly in favor of granting Omaha Indemnity additional preliminary injunctive relief. The July 1990 orders enjoining Wining from transferring assets and appointing a receiver complied with Rule 65(d)--they were specific in their terms, they described the acts to be restrained in reasonable detail, and the district court made extensive comments on the record setting forth the reasons for their issuance.
 
 
 23
 Accordingly, we affirm.
 
 
 
 *
 The HONORABLE JOSEPH T. SNEED, United States Senior Circuit Judge for the Ninth Circuit, sitting by designation
 
 
 [1]
 The HONORABLE D. BROOK BARTLETT, United States District Judge for the Western District of Missouri
 
 
 [2]
 In May 1989 the arbitration panel ruled that RAM is liable to Omaha Indemnity for $225 million. Since the filing of this appeal, the district court has confirmed that award and has entered judgment against Wining personally in the amount of $132,300,000. The propriety of those later rulings is not at issue on this appeal
 
 
 [3]
 The minutes of the Kensu Holdings board meeting of August 14, 1987 recite:
 The Board of Directors then carefully analyzed the transfer of these assets of the corporation since such transfer could be objected to by Omaha Indemnity Company as a violation of the stipulation of the parties and the order of the court in that certain case styled Omaha Indemnity Company v. Royal American Managers, Inc., et al., filed in the United States District Court for the Western District of Missouri ("Order"). However, after a thorough discussion and in the business judgment of the Board of Directors, the proposed transfer did not appear to violate the Order.
 
 
 [4]
 The Wyoming Commissioner of Insurance applied to liquidate Laramie under a consent statute. Wyo.Stat. §§ 26-28-106, 26-28-105 (1991)
 
 
 [5]
 In the district court, Omaha Indemnity consistently sought the alternative remedies of contempt sanctions or further preliminary injunctive relief
 
 
 [6]
 Wining's contention that the stipulated preliminary injunction was not an order for contempt purposes borders on the frivolous. See EEOC v. Local 580, 925 F.2d 588, 595 (2d Cir.1991); FSLIC v. Blain, 808 F.2d 395, 397-98 (5th Cir.1987); Combs v. Ryan's Coal Co., 785 F.2d at 980. Gardiner v. A.H. Robins Co., 747 F.2d 1180 (8th Cir.1984), in which the district court wrote "So Ordered" on a settlement agreement without the parties' consent and after the court had surrendered jurisdiction, is clearly distinguishable